434 P.2d 630

**George W. BOOZER, Jr., and Vermelle S. Boozer, his wife, Appellants,**

**v.**

**The ARIZONA COUNTRY CLUB, Arthur McCance and Ethel McCance, his wife, Bill Johnston and Jo Anne Johnston, his wife, Appellees.**

**No. 8426.**

Supreme Court of Arizona, In Division.

Dec. 7, 1967.

Rehearing Denied Jan. 9, 1968.

Forquer, Wolfe & Rosen, by Robert C. Forquer, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by Rex H. Moore and William R. Jones, Jr., Phoenix, for appellee The Arizona Country Club.

Moore, Romley, Kaplan, Robbins & Green by Philip A. Robbins and Marvin R. Kaplan, Phoenix, for appellees Johnston.

Fennemore, Craig, Allen & McClennen by Daniel T. Bergin, Phoenix, for appellees McCance.

McFARLAND, Vice Chief Justice:

Appellants, Vermelle S. Boozer and her husband, brought an action against The Arizona Country Club, Inc., Arthur Mc-Cance and his wife, and Bill Johnston (the club "pro") and his wife, all of whom were defendants below and appellees here. The action was for an injury to Mrs. Boozer sustained when she was struck by a ball driven by McCance. He drove the ball from the first tee, intending to send it north toward the first green, but the ball instead went in a northwesterly direction and struck Mrs. Boozer as she was driving balls north from one of the practice tees north and west of the first tee. The trial court awarded a summary judgment to each defendant, and plaintiffs have appealed.

The facts are not entirely clear. It does not appear how far the practice tee was from the first tee, nor is it clear what the angle was between the direction McCance intended his ball to go and the direction in which it actually traveled. The view between the two tees was unobstructed. Modern golf tees are large, in order to facilitate the maintenance of grass on their surface. Tee markers placed on the tees indicate the place from which the players should tee off, and it is generally understood that they must stand behind an imaginery line drawn between the markers. By moving the markers from time to time grass in the area last used is given time to recover from the divots and the trampling of the players.

Defendant Arizona Country Club, Inc., hereinafter called "the club," is a non-profit corporation owned by its members, who include the Boozers and the McCances. The record does not show whether Johnston, the club pro, is salaried, but he does have permission to run the practice range for his own profit, by making a charge for the use of balls furnished by him to any one wishing to practice. On the day of the accident, Mrs. Boozer paid for the use of a bucket of balls, proceeded to one of the tees of the practice range, and commenced to hit the balls to the north.

Her complaint alleged that McCance was negligent in that he saw or should have seen her, and should have anticipated that she would be injured if his shot failed to travel in the intended direction; in that he failed to warn her, if he did see her; in that he failed to make sure that the areas where his ball might enter were free from other persons, if he did not see her. The complaint alleged that Johnston was negligent in that he knew or should have known of the possibility of injury to persons on the practice range, by persons driving balls from the first tee; and in that he failed to construct a fence or take some other protective measures on behalf of users of the practice range. The complaint alleged that the club was negligent in that it should have known of the possibility of injuries to persons using the practice range, by persons driving balls from the first tee, and should have taken protective measures such as building a fence.

Generally, each defendant's answer contained a general denial, and pleaded contributory negligence, assumption of risk, and unavoidable accident. The motions for summary judgment were accompanied by affidavits, which stated that the course was laid out before Johnston came to work for the club; that under his contract of employment he had no right to alter the course or install protective devices; that the course was laid out like practically every other golf course in the country—i. e., with parallel fairways; that the president, during his eleven years in office, had never seen or heard of any one on the practice tee being struck by a ball driven from the first tee.

Mrs. Boozer's counter-affidavit stated that she had not, during her five years as a member of the club, heard of any one on the practice tee being struck by a ball driven

from the first tee; that Johnston operated the practice range for his own profit; that it was Johnston's duty to make recommendations to the club regarding safety measures; that Johnston placed the bag-holders on the practice tees, indicating where members must stand while practicing; that Exhibit "A" attached to Johnston's affidavit was inaccurate and not drawn to scale, and distorted the true situation by making it appear that the practice tee and the first tee were farther. apart than they actually were; that (on information and belief) Johnston had actual notice of the dangerous situation existing.

Mrs. Boozer's attorney also filed a counter-affidavit stating that he had

"* * * the promise of witnesses that they will appear and testify on behalf of the plaintiff; that to the best of his knowledge said testimony will be to the effect that the Arizona Country Club, its agents and officers, knew golf balls were being driven through the practice driving range. Further, this testimony, I am informed, will show that the Arizona Country Club, its officers and agents, knew of previous earlier similar accidents occurring on this practice driving range."

The attorney's affidavit further stated that he had

"* * .* the promise of a competent witness * * * that the testimony of this witness will be to the effect that the practice driving range and first tee * * * as they were on the day of the injury, constitute a negligent condition; that this testimony will be to the effect that the relationship between the practice driving range and the first tee, is dangerous and irresponsible."

McCance's deposition shows that the tee markers were "approximately" twenty feet from the north end of the tee, and three feet from the East side of the tee; that he was able to observe the trajectory of his ball; that there was nothing between him and Mrs. Boozer; that "to the best of [my] recollection," Mrs. Boozer was "on the last practice. tee, in front of the regular practice tees, which would be the ·first one—first practice tee starting east in front of the regular practice tees;" that on that day, the club had set up practice tees north of the regular ones—i. e., the markers had been moved forward that day; that he did not remember whether she was "near or close or far from" the markers, but "thought" that she was in between them; that he ordinarily hit the ball "pretty straight"; that "with relation to that line of palm trees down the side of number one, the West side of Number one tee," a reasonable estimate of how far back Mrs. Boozer was standing would be "in the neighborhood of 25 feet"; that he had played golf for over thirty years but had not "heeled" his ball on "very many occasions," and didn't recall any; that usually his ball erred in the other direction.

Mrs. Boozer deposed that she had been playing golf at the club for about five years prior to the accident; that for two years she played nearly every day, and after that she played several times a week; that she had taken many golf lessons on the same practice range; that she had also practiced on that range without taking lessons; that she had never been hit on the practice tee, had never seen any one else hit there, and had never seen a ball hit across the place where she was when she was injured; that she had never hit a ball from number one tee to that place, but had seen others drive balls near that place but further down-range; that she knew that golf balls do not always go where they are aimed; that the practice tees were not full—only two others were being used; that she picked the spot herself; that the practice tees had been moved forward, and "I couldn't tell you how far"; that the spot she selected was not too far from a palm tree, but she didn't know which one; that she thought that she was near the second palm tree but "I really don't know that"; that "I think I was in the first [space]"; that she picked the first space she came to, just because of "laziness"; that "It was the closest and I just took it"; that she heard no one holler "Fore."

Despite all of the material quoted above, there is no way of determining where Mrs. Boozer was or where Mr. McCance was, when the accident happened. The record does not show whether either Mrs. Boozer or McCance was left-handed, which would affect their relative positions and their ability to see each other. In order to make a definite determination of who, if any one, was negligent, the relative positions of these people must be known. We are not even sure of the exact locations of the first tee, or of the line of practice tees, as plaintiff's affidavit alleges that the diagram attached to Johnston's motion distorts and misrepresents the relative positions of the tees.

 Negligence is based on foreseeability. If the driving range had been placed directly in front of the first tee it would not be difficult for all three defendants to foresee harm to plaintiff, and to be held to be negligent if their legal relations to plaintiff made such a finding proper. Harm could be foreseen in such case because the practice tee would be in a direct line with the intended line of travel of the ball, and zero degrees deviation could cause plaintiff to be hit.

"Respondent's evidence was that his wife was in a position where she had a right to be; that her back was to the fourteenth tee; that she was within range of an intended drive from said tee; * * * that she was unaware that a ball would be driven from the tee at that time, and had no reason to believe that it would; and that appellant failed to warn her that she was going to drive. Such evidence entitled her to go to the jury, * * *" Take v. Orth (Mo.App.1965) 395 S.W.2d 270, 274.

"* * * [I]t is the duty of a golf player to exercise ordinary care to prevent injury to others by a driven ball; * * * before driving, it is his duty to give timely warning to persons unaware of his intention, whom he knows, or in the exercise of ordinary care should have known, are in line, or so close to the line, of the intended flight of the ball that danger to them reasonably might be anticipated. *This principle seems to be recognized by golfers the world over,* and they are so accustomed to its everyday application that the word "fore" is usually associated with the game and is recognized by them as a warning cry. * * * The defendant states, * * * the plaintiff was to his right, at an angle of approximately 90 degrees from the intended flight of his ball. The jury might fairly have inferred from the whole evidence that the angle in question was about 32 degrees. * * * The golf expert called as a witness *by the defendant* stated that it was usual and customary for a player to give warning of his intention to make a shot if a person was standing within an angle of 45 degrees to the line of intended flight and close to the lie of the ball." Alexander v. Wrenn, 158 Va. 486, 164 S.E. 715 (1932) [Italics ours.]

"In the case at bar it was not denied that a person standing within an angle of 33 degrees from the intended line of flight of the ball and within 59 feet of the player making the stroke was in danger of being hit by the driven ball." Ibid, p. 718

If, on the other hand, the line of practice tees was placed further south, foreseeability of a ball's going in that direction would be near zero, as it would take a deviation of 90 degrees or more from the intended direction to harm the plaintiff—a near impossibility. In such case, a directed verdict would be justified, and—if the facts were clear and undisputed—even a motion for summary judgment could be justified. Thus, in Benjamin v. Nernberg, 102 Pa. Super. 471, 157 A. 10, a judgment notwithstanding the verdict for the plaintiff was upheld, where the facts showed that the ball deviated 50 degrees, and in Houston v. Escott, D.C., 85 F.Supp. 59, a summary judgment for the defendant was granted where the deviation was only about 26 degrees. But in both cases the facts were free from doubt.

 Somewhere between zero and 90 degrees, there is a dividing line—a devia-

tion which might, as a matter of law, preclude a finding of negligence. The questions of contributory negligence and assumption of risk also depend upon the relative locations of the parties.

The record does not show the distance between the tee markers, their exact location on the first tee, or the distance behind them from which the ball was struck. McCance might have ignored the markers, and teed off from any point on the first tee which is 85 feet by 130 feet. There is also no "hard" evidence of Mrs. Boozer's position. By placing McCance and Mrs. Boozer at different points within the range of the information in the record, the angle of deviation of the ball appears to have been between five and eighty degrees.

■ The difficulties inherent in ascertaining the true facts in this case point up the reason why, as a general rule, issues of negligence and contributory negligence are not ordinarily proper subjects for summary adjudication, and should be resolved by trial in the ordinary manner. 6 Moore's Federal Practice 2583, and cases cited therein. This principle is even more applicable in Arizona because of Arizona Constitution, Art. 18, § 5, A.R.S., which states that the defense of contributory negligence or assumption of risk "shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

In Elson Development Company v. Arizona Savings and Loan Association, 99 Ariz. 217, 407 P.2d 930, we said that on a motion for summary judgment the trial court

"* * * does not try issues of fact, but only determines whether the same are genuine and in good faith disputed. * * A motion for summary judgment is granted erroneously if on an examination of the entire record it is found that any disputed fact issue exists which could, if true, affect the final judgment. * * *" 99 Ariz. at 220, 407 P.2d at 932

■ But the principle extends much further. If the material facts, although not in dispute, are uncertain, a summary judgment is improper. Valdosta Livestock Co. v. Williams, 31 F.R.D. 528 (D.C.N.C. 11/29/62); Chemical Foundation v. Universal-Cyclops, 2 F.R.D. 283 (D.C.Pa. 4/2/42).

"It [summary judgment] should be granted only where it is perfectly clear that no issue of fact is involved *and inquiry into the facts is not desirable to clarify the application of the law. * * * And this is true even where there is no dispute as to the evidentiary facts in the case, but only as to the conclusions to be drawn therefrom.*" [Italics ours.] Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955)

*"The facts and circumstances, although in no material dispute as to their actuality, reveal aspects from which inconsistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ. The drawing of inferences and the acceptance of hypotheses arising out of the facts are ordinarily attributes that the judicial process has conferred upon* the finder of facts. * * *

\* \* \* \* \* \*

"* * * *The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment * * *. A judge may not, on a motion for summary judgment, draw fact inferences.*

\* \* \* \* \* \*

"* * * *The case cannot be taken from the trier of facts simply because 'the lawyers for the respective parties, by the cross-motions, superinduced the idea that no factual questions were involved.'"* Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2nd Cir. 1962) [Italics ours.]

Since there were several persons in McCance's party on the first tee, and two other people practicing on the driving range near

Mrs. Boozer, it is obvious that a trial could result in evidence from which Mrs. Boozer's position can be ascertained with some degree of certainty. One of the affidavits filed was signed by the president of the club. Obviously, as a part owner of the club he stood to lose financially if the case were lost. In the case of Alvado v. General Motors Corporation, 229 F.2d 408 (2nd Cir. 1955), the opinion had the following to say about such a situation:

"The affidavit relates to facts peculiarly within the knowledge of defendant's officials * * * in such circumstances * * * the granting of a summary judgment is error. For the opponent of the motion is thereby deprived of the opportunity to cross-examine the movant's officials and is prevented from having a trial court assisted in its evaluation of their credibility by observing their demeanor while they testify * * * The failure of the opponent of the motion to file a counter-affidavit has no significance. * * * In many recent cases, where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth, we have pointed out that, and why the issues may not be disposed of on summary judgment." 229 F.2d at 412

Similarly, in Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, we find:

"The mere fact that a witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact * * *. It may well be that the weight of the evidence would be found on a trial to be with the defendant. But it may not withdraw these witnesses from cross-examination * * * and

their credibility and the weight to be given to their opinions is to be determined after trial, in the regular manner."

See also Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955), where the court said that a motion for summary judgment "was never intended to enable the parties to evade jury trials or have the judge weigh evidence in advance of its being presented."

In Chemical Foundation v. Universal-Cyclops, 2 F.R.D. 283 (W.D., Pa. 4/2/42), the court said that "it was not the intention of Rule 56 that a case should be tried by affidavits as a substitute for trial in the usual way in open court where the right of cross-examination exists."

And, in United States v. Newbury Mfg. Co., 1 F.R.D. 718 (D.Mass. 5/22/41), we find:

"The affidavits of defendant consist largely of statements of which the affiants would testify to at a trial. *The plaintiff has filed no counter affidavits by any prospective witness.* This omission, however, does not entitle the defendant to a summary judgment if there is an issue of material fact to be tried. * * * The rule does not compel a party to try his case on affidavits with no opportunity to cross-examine affiants * * *. The motion for summary judgment should be granted only where all the facts entitling the movant to the judgment are admitted or clearly established." [Italics ours.]

Appellees argue that the affidavit of plaintiffs' attorney to the effect that he would produce certain witnesses at the trial was mostly hearsay, and not made on personal knowledge, and therefore was of no effect. It is true that the affidavit did not comply with the rule[1], and was subject to be stricken on motion. However, as stated in Barron and Holtzoff's Federal Practice and Procedure, Vol. 3, page 154, with reference

---

[1]. "56(e) * * * [A]ffidavits shall be made on personal knowledge * * * and shall show affirmatively that the af-fiant is competent to testify to the matters stated therein." 16 A.R.S.

to Frederick Hart & Company v. Record-graph Corp., 3 Cir., 169 F.2d 580:

> "Though the opinion is not clear * * * each side had produced affidavits, and the court was probably holding only that the conflicting affidavits created a fact issue, *even though the affidavits of the party opposing the motion were technically improper as hearsay.*" [Italics ours.]

In United States for Use and Benefit of Austin v. Western Electric Company, 337 F.2d 568 (9th Cir. 1964), we find similar language in a case where the document filed was not in proper form. The court said:

> "No objection was interposed to the use of this *declaration* at the hearing on the motion for summary judgment. * * * [It] would have been subject to a motion to strike. Had appellees made such a motion or otherwise objected to the use of the declaration, the defect could have been remedied by appellants filing an affidavit in lieu of the declaration. Moreover, while Rule 56(e) does not state any different requirement for opposing affidavits than for the movant's affidavits, *'the papers supporting the movant are closely scrutinized whereas the opponent's are indulgently treated.'*" [Italics ours.]

The parties have cited many cases with regard to the liability or non-liability of the various defendants in the instant case. In our view, the applicability of these cases requires that the facts to which they apply first be determined. Upon such determination, the trial court can apply the law and decide whether to instruct the jury or direct a verdict.

> "Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment." Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228.

We do not know whether the facts that may be established at the trial will enable plaintiff's case to survive a motion for a directed verdict, but at this stage our feelings are similar to those of the judge in Wright & Associates, Inc. v. Ullrich, 26 F.R.D. 19, (D.Minn. 8/1/60) when he wrote:

> "Plaintiff insists that there is a fact issue. * * * From as much as I have heard, I doubt if it can show it, but it must have its chance to do so, and hence the denial of the summary judgment." 26 F.R.D. at 20

Reversed and remanded.

BERNSTEIN, C. J., and LOCKWOOD, J., concur.