448 P.2d 420

**YUMA FURNITURE COMPANY, an Arizona corporation, Appellant,**

v.

**Gladys M. REHWINKEL, Appellee.**

**No. I CA–CIV 809.**

Court of Appeals of Arizona.

Dec. 18, 1968.

· Nebeker & Nebeker, by Edith L. Nebeker, Yuma, for appellant.

Brandt & Baker, by Thadd G. Baker, Yuma, for appellee.

. DONOFRIO, Judge.

This is a personal injury case arising out of a fall which took place on the premises of the Yuma Furniture Company store. Defendant store (appellant) is appealing from the judgment entered on the verdict, and from the order denying defendant's motions for judgment notwithstanding the verdict, and for a new trial.

On April 18, 1965, the plaintiff, (appellee) Mrs. Rehwinkel, a sixty-eight-year-old retired secretary, her widowed sister, aged 72, and a friend, aged 80, went to the furniture store to look at a large used couch which had been advertised for sale. Upon entering the store the salesman offered to assist them and took them to the part of the store where the used furniture was displayed. One of the women expressed a desire to see the couch in the daylight.

. Daylight was available at either the front or the rear of the store. In this instance the salesman took one of the large pillows from the couch and asking the group to follow him, led them single file down an aisle with furniture and boxes on both sides to a loading dock in the rear of the store. He placed the couch pillow on a three-foot box, holding the pillow between him and the loading dock. His back was about two feet from the loading well. The plaintiff, being the last to arrive upon the scene, felt she could get a better view if she stepped around the salesman. In the process of going around him, she fell on the edge of the dock and into the loading well, thereby sustaining bruises on her right hip and leg and fracturing her os calsis bone.

Mrs. Rehwinkel testified that the light coming from the loading dock was very hazy, and although she was aware of the loading dock, she could not tell where the edge of the loading well began. Defendant's employee, the salesman, admitted that he gave them no warning as to their proximity to the edge of the platform, nor were there any warning signs or chains of any kind except that there was a strip of angle iron on the edge which had been painted an orange color.

Defendant presents three questions for review on this appeal. First, was plaintiff's evidence sufficient to submit the question of defendant's negligence to the jury? Second, should the court have given a "defendant takes the victim as he finds her" instruction? Third, was the court correct in refusing to give a "to look is to see" instruction? We believe all of these questions should be answered in the affirmative.

We must determine whether the evidence considered most strongly in favor of sustaining the jury's verdict was either, (a) so substantial that from it a reasonable inference could be drawn that there was a duty to plaintiff and a breach thereof by defendant, or (b) of such character that reasonable minds might differ as to the inferences to be drawn from the facts that there was such a duty and a breach thereof. Bullard v. Stonebraker, 101 Ariz. 584, 422 P.2d 700 (1967).

Plaintiff's position is that she was taken to a cluttered loading dock in a dimly lit warehouse and due to the peculiar tunnel-like construction of the loading ramp and the bluish-gray haze of the sun coming through the opening, together with her preoccupation in following the salesman to the opening and looking at the pillow which he held up for her, she was unable to see the danger of falling off the edge of the dock into the loading well. Further, that the salesman never did warn her of the danger.

Defendant advertised and offered this particular furniture for sale and owed to invitees the duty of exercising ordinary care to see that the portion of the premises which was expected to be used in showing the furniture was reasonably safe, and to warn the invitees of any unreasonably dangerous condition. It must be kept in mind

that a greater duty rests upon a merchant to discover dangerous conditions than upon the invitee who has a right to assume that the premises are reasonably safe for the invitee's use. Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 429 P.2d 442 (1967).

■ We believe the evidence supports plaintiff's position. Two of the three women testified in court, and both of them testified that the loading well was not apparent because of the poor lighting and cluttered area around the loading dock. Superimposed on this is the reasonable inference that the salesman, by asking them to follow him, carried the attention of the party with him when he took them to the spot and displayed the pillow. There is no question regarding the knowledge by the salesman of the well opening and its proximity to the invitees. Regarding the danger, reasonable minds could infer that the salesman knew, or by the exercise of reasonable care should have known, that the condition created by the lighting effect and the proximity of the loading well to the group which was intent on viewing the pillow in the daylight involved an unreasonable risk of harm to them. Reasonable minds could also conclude that the salesman should have expected that someone in the group under the circumstances would not realize the danger and fall into the well unless warned of the danger.

The responsibility of the proprietor in cases similar to the instant case is well stated in the Minnesota case of Harris v. Campbell Cereal Company, 243 Minn. 308, 67 N.W.2d 824 (1954). In this case the decedent entered the store for the purpose of purchasing some empty sacks. The merchant took her to the back area where a stairway upon her right was concealed from view by some additional sacks. Along with the merchant, the decedent inspected the sacks, with her back to the stairway. Although there was sufficient light to see the head of the stairway, her attention had been directed away from the same toward the sacks, by the merchant. She stepped back and fell to her death.

The merchant at no point disclosed to her her position of peril. The court said:

"1. It is well established that a merchant who displays wares on his premises near some opening, stairway, or obstruction and invites customers to inspect and to make selections therefrom cannot reasonably expect such customers to bestow the same degree of attention on their surroundings as would be required under other circumstances. In such a situation, it is well settled, the duty rests upon him to give adequate warning of the risks or dangers occasioned by such openings, stairways, or obstructions. (citations omitted)" 67 N.W.2d 824 at page 826.

■ In the instant case defendant urges that there is no liability based on the rule laid down in Daugherty v. Montgomery Ward, 102 Ariz. 267, 428 P.2d 419 (1967) for the reason that the conditions which plaintiff claims caused her accident were as open, obvious, and as well known to her as to the defendant. We believe the conditions here were altogether different from those in Daugherty, and more like those in Murphy v. El Dorado Bowl, Inc., 2 Ariz. App. 341, 409 P.2d 57 (1965). The rule applied in El Dorado is an amplification or exception to the rule in Daugherty. It recognized that the bare fact that a condition is open and obvious does not necessarily mean that the open and obvious condition is not unreasonably dangerous. The open and obvious condition is merely a factor to be taken into consideration to determine whether the condition was unnecessarily dangerous. A reasonable mind could well believe that the salesman should have recognized that these elderly women would not perceive or realize the danger of falling into the well because of the lighting and the attention they were giving to the pillow.

Whether the presence of the loading well created an unnecessarily dangerous condition under the circumstances of this case which would require the defendant to give some warning of same is, at least, a question upon which reasonable minds

could differ and therefore was a question for the jury.

■ The defendant urges that it was reversible error for the judge to refuse to give the jury a "to look is to see" instruction. Murphy v. El Dorado Bowl, Inc., supra, quoting from an Arizona Supreme Court case, Cummings v. Prater, 95 Ariz. 20, 26, 386 P.2d 27 (1963), points out that under Arizona law there may still be a breach of duty even if the dangerous condition is open and obvious:

> " 'Of course, the bare fact that a condition is "open and obvious" does not necessarily mean that it is *not* unreasonably dangerous. Harper and James, 27.13. The open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous.' " 2 Ariz. App. 341 at page 343, 409 P.2d 57 at page 59.

An "open and obvious" instruction was given in this case. We hold that the refusal to give the "to look is to see" instruction was not reversible error.

The court gave the following instruction:

> "One who by his negligence causes an injury to another must take the victim as she is and cannot complain that the person injured already had a weakened physical or emotional structure or condition which makes the injury seem more severe than might have been expected had the victim had a stronger body and mind."

Defendant contends that this instruction should not have been given since there was no evidence of any infirmity of the plaintiff before the accident occurred. Plaintiff, on the other hand, urges that defendant could not be prejudiced by this "innocent" statement. She seeks to justify the instruction by stating that she is entitled to have the jury cautioned that her age and as a consequence, physical condition, should not be weighed against her.

■ In assessing damages, the jury should be permitted to consider all the relevant circumstances, including the age, sex and physical condition of the plaintiff before and after the injury. Roedder v. Rowley, 28 Cal.2d 820, 172 P.2d 353 (1946). Plaintiff's injuries confined her to a hospital for some time, to a wheel chair for two months, and to a walker for one month. Thereafter she took many therapy treatments and still suffers injury. After her condition became stationary the doctor testified that there was not much that could be done for the injury to her heel which persisted, except an operation which he did not deem advisable because of her age. Dr. W. A. Bishop, Jr. testified:

> "Q. Did you feel that the fusion operation was indicated for Mrs. Rehwinkel?
>
> "A. No, for two or three reasons. Number one is her age, Number two is that she's not expected to be on her feet to a degree that it would pay off in the end. * * *
>
> *   *   *   *   *   *
>
> "Q. In other words, the fact that she is slowing down and moving around, that kind of keeps pace with the deterioration of her joints?
>
> "A. Yes, sir. It would be entirely different if she was even 40 years of age because most people that have an injury of that type at that age don't get by indefinitely without surgery if they are going to be active."

■■ It is common knowledge that elderly persons do not have the same physical agility that younger persons commonly have and also that elderly persons' bones may be more brittle and they may have a lower threshold of pain. The age of the injured person and her physical condition certainly may be important. The jury should not be precluded, and in fact should be permitted to consider this when it attempts to determine what is the monetary value of future pain and suffering. While the evidence may not justify the instruction in some of its aspects, the medical evidence as to the reason surgery was not performed because of her age supports the instruction in this respect. Although

we do not favor the instruction in this case, we do not hold the giving of it prejudicial error.

Judgment affirmed.

CAMERON, C. J., and STEVENS, J., concur.