631 P.2d 530

**Annie SMEDBERG, Appellant,**

v.

**Joe SIMONS and Dorothy Simons; Shirley Nielon and James B. Nielon; Attilio Napolitano and Virginia Napolitano, Appellees.**

**No. 14691.**

Supreme Court of Arizona, In Division.

July 10, 1981.

---

Fred J. Pain, Jr., Harry L. Howe, Phoenix, for appellant.

Maupin & Wilson by William G. Fairbourn and Thomas G. Hayman, Phoenix, Former Attys. for appellees, Simons and Nielon.

Evans, Kitchel & Jenckes by William G. Fairbourn and John W. Main, Jr., Phoenix, for appellees, Simons and Nielon.

Johnson, Jessen, Dake & Oplinger, P. A. by G. Michael Jessen, Richard H. Oplinger, James E. Vieh, Phoenix, for appellees, Napolitano.

GORDON, Justice:

This is an appeal from a judgment for defendants-appellees and from a denial of plaintiff-appellant's motion for a new trial in an action to recover damages for personal injuries. We take jurisdiction pursuant to Rule 19(e), 17A A.R.S. Rules of Civil Appellate Procedure, and affirm.

It is appellant's position that the trial court erred in its instructions to the jury on the law of open and obvious conditions and erred in refusing to give appellant's requested instructions relative to open and obvious conditions. The facts necessary to a resolution of the matter, viewed in the light most favorable to appellee, *Home Indemnity Co. v. Bush*, 20 Ariz.App. 355, 513 P.2d 145 (1973), are the following:

On December 16, 1976, appellant Mrs. Annie Smedberg fell while crossing a temporary construction bridge built by defendant Napolitano and installed at defendant Simons' apartment complex at 6320 North 16th Street in Phoenix.[1] Mrs. Smedberg was eighty-three years of age and a resident of the complex at the time. The construction bridge was placed across a trench, approximately two feet deep by two feet wide, which completely surrounded the complex and was dug by Napolitano, a plumbing contractor, to install hot and cold water lines. It was located at the northeast entrance of the complex, and similar bridges were placed at each of the remaining three entrances.

The bridge was constructed of wood with a plywood board on either side high enough to prevent people from stepping off into the trench but not necessarily high enough to serve as a handrail. It extended from a concrete sidewalk over the trench to the parking lot pavement. The concrete walkway was approximately four inches higher

---

1. Appellant originally proceeded against three defendants, Simons, Napolitano and the manager of the apartment complex, Shirley Nielon.

At the close of the evidence, however, the trial court granted a directed verdict as to Ms. Nielon.

than the pavement. At the walkway end was a sloping wooden ramp leading up onto the bridge; at the other end the bridge stopped in a four inch vertical drop to the pavement.

The bridge had been in place for approximately two months before Mrs. Smedberg fell and provided her only means of entering and leaving the complex near where she parked her car. She had used the bridge frequently during the preceding two months and testified that she had had no previous difficulty with it. There was no evidence that she suffered from any conditions that would hamper her walking other than her age. In fact, she testified that she lived alone, took care of her apartment alone and owned and maintained an automobile which she frequently drove to do errands and visit friends.

On the day in question, Mrs. Smedberg had driven herself and a friend to do grocery shopping. When she returned, she brought some bundles into her apartment and was going back to the car for more when she fell while stepping off the bridge. She described the fall as follows:

"A. I come down from the gate and on the bridge. The bridge was a little bit wavey, and I stepped on it and the ground wasn't even and I lost my balance and fell and landed right on the platform.

* * * * * *

"Q. Did you say that the bridge was a little wavey?

"A. What I meant, it was shakey. It moved a little bit when I stepped down on it. What do you call that?

"A. I think the jury understands what you mean.

"You stepped off with your left foot, is that correct?

"A. That's correct.

"Q. You apparently touched the ground, is that correct?

"A. I touched the ground with one foot and the other one was still on the platform, and I began to swing around.

"Q. Did you do anything as you began to fall?

"A. I turned around like this and hit my hand against the board and cut my fingers.

"Q. Did you try to grab for the railing?

"A. But there was none.

"Q. What do you mean?

"A. Just this board down here."

Appellant offered expert testimony that the bridge's side rails were structurally inadequate and that the walking platform, although designed properly, was incorrectly installed. The expert testified on cross-examination, however, that on the day he visited the complex to examine the bridge, one or two days after Mrs. Smedberg's fall, he walked across the bridge and found it to be secure, not wobbly or shakey. Additionally, there was testimony offered that there had been no previous incidents or complaints concerning any of the bridges.

Appellant predicates error upon the use of the following instruction: "There is no liability for injuries from dangers that are obvious or that is [sic] well known to the person injured as to the landlord or contractor." She argues that instruction to be an incomplete statement of Arizona law inapplicable in its incomplete form to her situation where she had no alternative other than to confront the danger and tantamount to a directed verdict for defendants. She urges that a complete statement of the law would include the concept that the landlord or contractor would not be liable for an obvious or known condition unless the landlord or contractor should anticipate the possibility of harm despite such knowledge or obviousness. She urges further that Simons and Napolitano should have anticipated that she could be injured by the "dangerous" bridge even though the dangerous condition was obvious to her.

We have previously stated that:

"[i]nstructions must be viewed as a whole and not piecemeal, * * * the test being, upon the whole charge, whether the jury will gather the proper rules to be applied in arriving at the correct decision * * *. It is also the rule that unless an issue is supported by the evidence, it is improper to instruct upon it * * *. It is not error for the court to refuse to give requested

instructions adequately covered elsewhere by instructions which are given." *Kauffman v. Schroeder*, 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977) (Citations omitted.)

Applying these standards, we hold that the trial court properly instructed the jury with regard to negligence and open and obvious conditions.

The traditional rule relating to open and obvious conditions absolved a landowner from liability to entrants from harm caused by a dangerous condition on his land of which the entrant was aware and realized the risk, or which was obvious. *See Moore v. Southwestern Sash & Door Co.*, 71 Ariz. 418, 228 P.2d 993 (1951). *See generally* Annot., 35 A.L.R.3d 230 (1971). In 1963, in a suit between a tenant and landlord, we stated that "[o]f course, the bare fact that a condition is 'open and obvious' does not necessarily mean that it is *not* unreasonably dangerous. * * * The open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous." *Cummings v. Prater*, 95 Ariz. 20, 27, 386 P.2d 27, 31 (1963) (Emphasis in original; citations omitted.) *See also* 2 F. Harper & F. James, The Law of Torts § 27.13 (1956). Our statement in *Cummings, supra*, exemplifies a movement away from strict application of the traditional rule. *See, e. g., Ferguson v. Bretton*, 375 A.2d 225 (Me. 1977); *Dawson v. Payless for Drugs,*, 248 Or. 334, 433 P.2d 1019 (1967). *See also* Restatement (Second) of Torts § 343A(1) (1965); 35 A.L.R.3d, *supra*.

Our courts have reiterated the *Cummings* language, *see, e. g., Brierly v. Anaconda Co.*, 111 Ariz. 8, 522 P.2d 1085 (1974); *Flowers v. K-Mart Corp.*, 126 Ariz. 495, 616 P.2d 955 (App.1980), but have applied it only in circumstances wherein plaintiff's attention has been distracted, *see Yuma Furniture Co. v. Rehwinkel*, 8 Ariz.App. 576, 448 P.2d 420 (1968); *Wiseman v. Young*, 4 Ariz.App. 573, 422 P.2d 404 (1967); *Murphy v. El Dorado Bowl, Inc.*, 2 Ariz.App. 341, 409 P.2d 57 (1965).

In the instant case, there was no evidence that Mrs. Smedberg's attention was divert-ed or that she was not aware of the nature and potential hazards of the bridge. She had used it frequently and safely over the preceding two months as had the other tenants. There is nothing in the record to show that as to her, the defendants had breached a duty of care.

The trial judge's instructions included the following:

"[A] landlord had the duty to use reasonable or ordinary care under the circumstances to make and keep the premises reasonably safe for the tenant's use and to protect the [tenant] from unreasonable harm from dangers which may exist. The landlord has the further duty to discover and correct dangerous conditions which constitute unreasonable risk of harm to his tenants."

Taken as a whole, we believe the instructions correctly stated the law. We also believe that the evidence did not warrant an instruction reflecting the exception to the traditional rule of open and obvious conditions. *See Kauffman, supra.*

The judgment of the trial court and the order denying the motion for a new trial are affirmed.

STRUCKMEYER, C. J., and CAMERON, J., concur.