851 P.2d 847

**Jeanne BELLEZZO, Plaintiff–Appellant,**

**v.**

**STATE of Arizona and Arizona Board of Regents, Defendants–Appellees.**

**No. 1 CA–CV 90–636.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 29, 1992.

Review Denied June 2, 1993.

Langerman, Begam, Lewis & Marks by Elliot G. Wolfe, Michael R. Golder, Cora Perez, Phoenix, for plaintiff-appellant.

Grant Woods, Atty. Gen. by Thomas J. Dennis, Michelle Mills, Asst. Attys. Gen., Phoenix, for defendants-appellees.

## OPINION

McGREGOR, Judge.

Plaintiff-appellant Jeanne Bellezzo (Bellezzo) appeals from the summary judgment granted to defendants-appellees State of Arizona and Arizona Board of Regents (appellees) in her negligence action for injuries she suffered when struck in the head by a foul ball at her son's college baseball game. The central issue presented is whether appellees, as owners/operators of a baseball stadium, exposed spectators to a foreseeable, unreasonable risk of injury from foul balls and therefore breached the applicable standard of conduct.

### I.

In March 1988, Bellezzo and her husband attended baseball games between Arizona State University (ASU) and the University of Nevada at Las Vegas (UNLV) at Packard Stadium (the stadium) in Tempe, Arizona. Their son was UNLV's catcher. Bellezzo had attended her son's baseball games for more than thirteen years.

On March 21, Bellezzo and her husband arrived at the baseball game early and entered the stadium without obtaining tickets. They sat directly behind home plate until they were asked to move to other

seats, at which time they moved approximately thirty feet to one side. Both sites were protected by a backstop, the large screen located behind home plate and designed to protect spectators from foul balls.

On March 22, Bellezzo and her husband arrived at the baseball game after the admission booths opened. Because their names were not on the list for free tickets, Bellezzo's husband requested that an employee ask ASU's baseball coach to authorize their free admission. The employee subsequently obtained a note from ASU's coach instructing that Bellezzos be given two free tickets.

As Bellezzo and her husband entered the stadium, they asked an employee if they were required to sit in the seats designated in their complimentary tickets. The employee told them he did not expect a large crowd at the game. The Bellezzos interpreted the employee's statement as permission to sit in any available seat and sat in the screened area behind home plate. Subsequently, an usher informed them that the seats in which they were sitting were reserved for season ticket holders and that they would have to sit in their assigned seats. Bellezzo and her husband then moved to the vicinity of their assigned seats, located in an unscreened area behind the visitors' dugout along the first base line. During the game, a foul ball ricocheted off a pole at the edge of the backstop and hit Bellezzo in the head.

Bellezzo and her husband sued ASU, the National Collegiate Athletic Association (NCAA),[1] and appellees for negligence (1) "in designing, creating, installing and/or maintaining an inadequate backstop, fence or screening protection for spectators;

[and] (2) in failing to make Packard Stadium reasonably safe for spectators by either constructing or adding adequate protection or warning of the danger and risk involved at the location where Mrs. Bellezzo was injured."

Upon motion, the court dismissed ASU as a defendant and Bellezzo's husband as a plaintiff. Appellees filed a motion for summary judgment, contending they complied with the standard of conduct required of a baseball stadium's proprietor by erecting the existing backstop to protect spectators from the open and obvious danger of foul balls. The trial court determined "as a matter of law the acts of defendant[s] were reasonable, the defendant[s] took reasonable care, and plaintiff was aware of the risks" and granted summary judgment.

Bellezzo timely appealed, contending that whether appellees breached the applicable standard of conduct necessarily raises genuine questions of material fact that preclude summary judgment. *See* Ariz. R.Civ.P. 56(c).[2] We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. § 12–2101B.

## II.

■ The first question in this action, as in any negligence action, is whether appellees owed any duty of care to Bellezzo. That is, was the relationship of the parties "such that [appellees were] under an obligation to use some care to avoid or prevent injury to [Bellezzo]"? *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). Whether a defendant owes a duty to a plaintiff generally presents an issue of law for the trial court and is therefore appropriate for summary judgment. *Id.* For purposes of this appeal, the parties agree Bellezzo was an invitee[3] and

---

1. Because the plaintiffs never served NCAA, the organization did not become a party to this suit.

2. A court can grant summary judgment when "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

3. The Restatement defines invitee as follows:

(1) An invitee is either a public invitee or a business visitor.
(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

RESTATEMENT (SECOND) OF TORTS § 331 (1965).

appellees therefore owed her a duty to conform to a particular standard of conduct to protect her against foreseeable and unreasonable risks of harm. *See Rogers v. Retrum,* 170 Ariz. 399, 403, 825 P.2d 20, 24 (App.1991); *see also* W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §§ 30–31, at 164–73 (5th ed. 1984).

### III.

Having concluded appellees owed some duty of care to Bellezzo, we turn to the issue central to this appeal: did the trial court err in concluding as a matter of law that appellees conformed to the required standard of conduct?

■ Because Bellezzo was an invitee, the applicable standard of care obligated appellees to discover and warn or protect Bellezzo against *unreasonable* risks of harm. *Markowitz,* 146 Ariz. at 355, 706 P.2d at 367. *See* PROSSER AND KEETON, *supra,* § 31 at 169 ("Negligence is ... 'conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.'" (footnote omitted)).[4] Although the question of breach of duty generally presents an issue of fact for the jury,

> [o]bviously, it may be said in some cases as a matter of law that defendant's actions or inactions do not breach the applicable standard of conduct.

*Markowitz,* 146 Ariz. at 357, 706 P.2d at 369; *see also Coburn v. Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1985) (court finds no breach of duty as a matter of law and therefore upholds summary judgment for defendant).

We recently applied the principles set forth in *Markowitz* in *Rogers v. Retrum.* In *Rogers,* a high school student who was injured in a car accident after leaving the school's campus during classroom hours sued the high school district for negligence in maintaining an open-campus policy. In determining whether the school district's decision to adopt an open-campus policy exposed its students to a foreseeable, unreasonable risk of harm, we acknowledged that "[t]o decide whether a risk [is] unreasonable requires an evaluative judgment ordinarily left to the jury." 170 Ariz. at 402, 825 P.2d at 23. We also recognized, however, that not every foreseeable risk is an unreasonable risk and that whether a risk is unreasonable "merges with foreseeability to set the scope of reasonable care." *Id.* In defining the role of the court in setting the scope of reasonable care, we stated:

> [I]n approaching the question of negligence or unreasonable risk, "the courts set the outer limits. A jury will not be permitted to require a party to take a precaution that is clearly unreasonable."

*Id.* (citation omitted). We concluded that even though the risk that students who leave the school's campus during classroom hours may be involved in car accidents is foreseeable, it is not unreasonable. We therefore determined as a matter of law the school district was not negligent and affirmed summary judgment in favor of the school district. *Id.* at 403, 825 P.2d at 24.

Applying that same analysis to these facts, we conclude that because appellees' conduct did not expose their invitees to an unreasonable risk of injury, appellees are not negligent as a matter of law.

### A.

Although Arizona courts have not previously considered the scope of the duty of reasonable care applicable to baseball stadium operators, many other jurisdictions have considered the question. The over-

---

**4.** The Restatement sets forth the standard of care owed by a possessor of land to an invitee as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343.

whelming majority have concluded, as a matter of law, that a stadium operator is not liable for injury to a spectator struck by a batted or thrown ball if the spectator was seated in an unscreened area of the stadium. In reaching this conclusion, some courts have held that the stadium operator complied with a particularized standard of care, while other courts have found no duty to protect spectators from the open and obvious risk of being struck by a batted or thrown ball. *See* James L. Rigelhaupt, Jr., Annotation, *Liability to Spectator at Baseball Game Who Is Hit by Ball or Injured as Result of Other Hazards of Game,* 91 A.L.R.3d 24 (1979). Although our analysis varies somewhat from the analysis relied upon by other jurisdictions, we believe the factors considered by other courts provide assistance in determining whether these appellees exposed Bellezzo to an unreasonable risk of harm.

### B.

■ In analyzing the scope of appellees' duty to spectators, we first consider whether the risk of injury from foul balls is open and obvious.[5] Although this factor is not always determinative, a land possessor "is not ordinarily found negligent for injuries to ... invitees from conditions which are open and obvious, nor for those which are known to the invitee." *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368. The underpinnings of that general principle are self-evident: when a danger is open and obvious, the risk of harm generally is slight because the condition is easily perceived and therefore does not pose an unreasonable risk against which the landowner must protect invitees. *See McFarland v. Kahn,*

123 Ariz. 62, 63, 597 P.2d 544, 545 (1979) (condition on land that is open and obvious generally is not unreasonably dangerous).

Other jurisdictions implicitly recognize the risk of being struck by a foul ball at a baseball game as an open and obvious condition. *See, e.g., Jones v. Three Rivers Mgmt. Corp.,* 483 Pa. 75, 394 A.2d 546, 550 (1978) ("Evidence that an injured party was exposed in the stands of a baseball stadium to the predictable risks of batted balls ... is not sufficient to establish, prima facie, a breach of the standard of care owed a baseball patron by a stadium operator."); *Neinstein v. Los Angeles Dodgers, Inc.,* 185 Cal.App.3d 176, 229 Cal.Rptr. 612, 616 (1986) (likelihood of foul balls entering stadium stands in unscreened areas is common knowledge); *Swagger v. City of Crystal,* 379 N.W.2d 183, 185 (Minn.App.1985) (landowners owe only a limited duty to patrons of inherently dangerous sporting events).[6]

■ Uncontested facts establish the danger of being struck by a foul ball was open and obvious to Bellezzo. She testified she had regularly attended her son's baseball games for more than thirteen years. She knew that batters may hit foul balls into the stands where spectators are seated. *See Swagger,* 379 N.W.2d at 185 (" 'No one of ordinary intelligence could see many innings of the ordinary league [baseball] game without coming to a full realization that batters cannot and do not control the direction of the [base]balls.' ") (quoting *Brisson v. Minneapolis Baseball & Athletic Association,* 185 Minn. 507, 240 N.W. 903, 904 (1932)). Indeed, Bellezzo never suggested the risk of being struck by a foul ball was other than open and obvious.

---

**5.** In describing open and obvious dangers, the Restatement provides:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
>
> (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of

importance indicating that the harm should be anticipated.

RESTATEMENT (SECOND) OF TORTS § 343A.

**6.** Several jurisdictions also have addressed open and obvious dangers in other spectator sports. *See, e.g., Baker v. Mid Maine Medical Ctr.,* 499 A.2d 464, 467 (Me.1985) (risk that spectator at golf game may be struck by golf ball is obvious); *Pestalozzi v. Philadelphia Flyers Ltd.,* 394 Pa.Super. 420, 576 A.2d 72, 74 (1990) (risk that spectator at hockey game may be struck by errant hockey puck is common and foreseeable).

The legal effect of the open and obvious nature of the situation encountered by Bellezzo equates to that of an example described by our supreme court in *Markowitz:*

One may say as a matter of law that the government would *not* be negligent in failing to post a sign warning visitors to the Grand Canyon that it is a long way to the bottom and those who stand too close to the edge may lose their balance, fall and get hurt.

146 Ariz. at 357, 706 P.2d at 369. A similar observation applies to the failure of an owner of a baseball park to post a sign warning fans that no screen protects them from the open and obvious risk of foul balls if they sit in an unscreened area. The lack of a screen is as obvious as the fact that the Grand Canyon is a chasm, and the danger that a spectator hit by a foul ball may be injured is as evident as the likelihood that one who falls into the Grand Canyon may be hurt. *Cf. Boozer v. Arizona Country Club,* 102 Ariz. 544, 547, 434 P.2d 630, 633 (1967) (standard of care requires a golfer about to drive the ball to warn anyone standing within the zone of danger, *if that person is not aware of the impending stroke* ).

Appellees urge us to follow those jurisdictions that regard the open and obvious nature of the risk a spectator could be struck by a foul ball as providing sufficient basis to justify finding, as a matter of law, that appellees were not negligent. We need not resolve that argument, however, because in this instance other factors support our conclusion that appellees protected spectators from the reasonably foreseeable risk of injury.

### C.

■ In determining whether spectators faced an unreasonable risk of injury, we also consider whether appellees provided alternative seating in a screened area and whether appellees reasonably protected spectators by screening the most dangerous areas of the stadium.

Several jurisdictions have considered the availability and placement of screened seating in defining the duty owed by a baseball stadium proprietor to spectators or the standard of care applicable to a proprietor. *See, e.g., Arnold v. City of Cedar Rapids,* 443 N.W.2d 332, 333 (Ia.1989) (summary judgment for baseball stadium owner affirmed because stadium owner provided adequate number of screened seats); *Swagger,* 379 N.W.2d at 185 (stadium management not negligent when it provides a choice between screened and unscreened seating); *Akins v. Glens Falls City Sch. Dist.,* 53 N.Y.2d 325, 441 N.Y.S.2d 644, 645–47, 424 N.E.2d 531, 532–34 (1981) (in entering judgment notwithstanding the verdict for owner of baseball stadium, court considers that stadium owner provided adequate number of screened seats in the area behind home plate where danger is greatest and that injured spectator elected to sit in an unscreened area of the stadium); *accord Maytnier v. Rush,* 80 Ill. App.2d 336, 225 N.E.2d 83 (1967); *Uzdavines v. Metropolitan Baseball Club, Inc.,* 115 Misc.2d 343, 454 N.Y.S.2d 238 (N.Y.Civ. Ct.1982). In our view, those considerations are relevant not to defining whether a stadium proprietor owes a duty to spectators, but rather to defining the scope of the duty of reasonable care.

In *Akins,* the New York Court of Appeals resolved the same issue as we confront. In that case, a foul ball struck and seriously injured a spectator viewing a baseball game from an unprotected area rather than from screened bleachers behind home plate. In defining the scope of the duty of reasonable care imposed upon the owner of a baseball stadium, the court initially noted that the owner of a baseball field "is not an insurer of the safety of its spectators." 441 N.Y.S.2d at 646, 424 N.E.2d at 533. After discussing the approaches taken by other jurisdictions, the court adopted the majority rule:

Under the majority rule, the owner must screen the most dangerous section of the field—the area behind home plate—and the screening that is provided must be sufficient for those spectators who may be reasonably anticipated to desire protected seats on an ordinary occasion.

*Id.* Applying that rule, the court concluded as a matter of law that the owner of the baseball field had fulfilled its duty of reasonable care and, therefore, no question of negligence remained. *Id.*, 441 N.Y.S.2d at 648, 424 N.E.2d at 535.

Under the undisputed facts of this action, we reach the same conclusion. Packard Stadium seats 7,800 spectators. A backstop approximately eighty-four feet wide and thirty-two feet high protects approximately 1,800 seats located behind home plate and for some distance down each foul line. No screen protects the remaining seats. Although ASU reserves the majority of the protected seats for season ticket holders, some are available to the public. ASU seldom receives requests for seats behind the backstop solely for purposes of protection, and the number of protected seats available is sufficient to fill the requests expected to be made.

On the day the foul ball hit Bellezzo, 201 screened seats were available to the public and 156 of those seats were empty. Bellezzo did not controvert appellees' evidence that "the backstop is fixed in the place [it occupies] because that is where the vast majority of foul balls are hit during a game." Bellezzo also did not controvert appellees' evidence that the protected seating satisfied the expected requests for such seats. We therefore accept that evidence as true.

Given those facts, we conclude as a matter of law that appellees complied with their duty to protect spectators from an unreasonable risk of being injured by a foul ball. The stadium offered protected seating, sufficient to fill expected requests, and in fact protected seating was available on the day of Bellezzo's injury.[7]

■ Were we to hold otherwise, we would not fulfill our responsibility to set the outer limits of negligence. A contrary conclusion would expose appellees to liability for injuries sustained by those spectators who choose to sit in unscreened areas, despite the open and obvious risk of sitting in such areas and the availability of a protected alternative. *See* RESTATEMENT (SECOND) OF TORTS § 343A cmt. e (person faced with an open and obvious danger "is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify ... the risk...."). The law requires appellees to protect spectators from unreasonable risks of harm, but does not require appellees to protect from or insure against all risks, no matter how remote or obvious.

## IV.

As we did in *Rogers*, we set the outer limits of negligence in this case and thereby prevent a jury from requiring appellees to take precautions that are clearly unreasonable. *See Rogers*, 170 Ariz. at 402, 825 P.2d at 23. We decline to make proprietors of baseball stadiums insurers against the ordinary risk a spectator seated in an unscreened area of the baseball stadium may be struck by a ball. Rather, we impose upon them the usual duty to act with reasonable care to protect against foreseeable, unreasonable risks.

For the foregoing reasons, we affirm.

TAYLOR, J., concurs.

CLABORNE, Presiding Judge, specially concurring.

I agree with the majority's conclusion that the danger posed to the Bellezzos was not unreasonable. I also agree with the majority's conclusion concerning the legal duty that Arizona owed to Mrs. Bellezzo. Clearly, a landowner owes a duty to one he invites on his premises, and that duty is to use reasonable care to keep those premises safe for the use of the person invited. *Tribe v. Shell Oil Co.*, 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982). Yet, I also agree with the position of others that to divide guests into invitees, licensees, or trespassers is to perpetuate artificial classi-

---

7. We reject Bellezzo's contention that a factual question exists regarding whether an usher forced her and her husband to sit in unscreened seats. The evidence Bellezzo presented estab-

lishes only that an usher requested that they move from their seats directly behind home plate to their designated seats, not that he denied them access to seats in all screened areas.

fication. *See Shaw v. Petersen,* 169 Ariz. 559, 563–68, 821 P.2d 220, 224–26 (1991) (Fidel, C.J., specially concurring.) The duty in this case, as with most other negligence cases, remains constant and the real question is whether the standard of conduct required by that duty was breached. *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078. However, the majority's repetitive emphasis on the "open and obvious" nature of the danger risks reviving an often-abused basis for summary judgment. The issue here is whether summary judgment was appropriate.

The majority jumped into a thicket which is simply unwarranted. Our supreme court has repeatedly cautioned, in a variety of contexts, that the openness of a condition is only one factor in deciding whether the condition is unreasonably dangerous and that the question must usually be left for the jury to decide. *See, e.g., Markowitz,* 146 Ariz. at 356, 706 P.2d at 368; *Cummings v. Prater,* 95 Ariz. 20, 27, 386 P.2d 27, 31 (1963); *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 267, 550 P.2d 1065, 1068 (1976). *See also Turner v. Machine Ice Co.,* 138 Ariz. 329, 333, 674 P.2d 883, 887 (App. 1983); *Murphy v. El Dorado Bowl, Inc.,* 2 Ariz.App. 341, 343, 409 P.2d 57, 59 (1965). In determining whether a landlord breached his duty of reasonable care, we ask whether reasonable precautions were taken to prevent injury, not whether the danger which existed was open and obvious. Not only has Arizona said time and time again that an open and obvious danger is a fact question not to be decided by a judge, but also that because a condition is open and obvious does *not* necessarily mean that it is unreasonably dangerous. *Smedberg v. Simons,* 129 Ariz. 375, 378, 631 P.2d 530, 533 (1981); *Beach v. City of Phoenix,* 136 Ariz. 601, 667 P.2d 1316 (1983); *Tribe v. Shell Oil Co.,* 133 Ariz. at 519, 652 P.2d at 1042; *Coburn,* 143 Ariz. 50, 691 P.2d 1078; *Johnson v. Tucson Estates, Inc.,* 140 Ariz. 531, 683 P.2d 330 (App.1984); *Yuma Furniture Co. v. Rehwinkel,* 8 Ariz.App. 576, 448 P.2d 420 (1968). Examination does not end with

the observation that a danger was open and obvious. Rather, the examination shifts to such questions as magnitude of risk of harm, foreseeability that the danger will be overlooked or not discovered, and cost and feasibility of a cure.

Cardozo was right when he said in *Pokora v. Wabash Ry. Co.,* 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149 (1934), that one must use caution in framing standards of behavior into rules of law.

Here, as the majority points out, baseball spectators need no warning that foul balls may fly where there is no screen. But in this, as in other "open and obvious" cases, openness of risk is merely the starting point. In this case the defendants did not withhold protection against the risk; an adequate number of screened seats was available for those who wanted such protection. The true issue of this case is, therefore, whether the defendants subjected spectators to an unreasonable danger by permitting them to *choose* an unscreened seat.[8] I join the majority in concluding that the evidence was insufficient. I would uphold summary judgment not because the danger was open and obvious, but because the defendants took reasonable measures to meet the danger under the circumstances.

My difference with the majority is merely one of emphasis, but for historical reasons I think the difference is important. Too many inappropriate summary judgments have been granted on "open and obvious" grounds for us to risk reviving the "open and obvious" rule. The question, we should always remind ourselves, is not obviousness of danger but reasonable care under the circumstances.

The proprietor of a ball park, by adequately screening the area behind home plate where the danger of being hit by a foul ball is the greatest and providing adequate protection for as many spectators as may be reasonably expected to desire seating, fulfills the duty required of the propri-

---

**8.** The evidence was so highly equivocal concerning whether Bellezzo was forced to sit in an unscreened area that it does not present a mate-

rial fact issue which would preclude summary judgment. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

**556**

etor. *Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981), *reargument denied* 54 N.Y.2d 831, 443 N.Y.S.2d 1031, 427 N.E.2d 1192 (1981).

The size of the stadium, the size of the backstop, the highly equivocal evidence that Bellezzo was forced to sit in the un-screened area, the lack of a record concerning where most foul balls are hit, the lack of testimony concerning whether the protected area satisfied the expected requests for such seating justified the finding by the trial court.