No. 15,521.

VOLZ *v.* WILLIAMS ET AL.
(152 P. [2d] 996)

Decided October 23, 1944.

Mr. RAYMOND M. SANDHOUSE, for plaintiff in error.

Mr. HUBERT D. WALDO, JR., Messrs. KELLY & SNYDER, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF suffered injuries when she fell into a grease pit located on a filling station property while carrying her infant child from the ladies' rest room of the station to the automobile, which her husband was having serviced by the station attendant. The accident occurred January 31, 1941, at 6:30 p.m., which was after dark. She testified that there were no lights in the rest room; that in order that she might see, she had to strike some matches, and that there were no outside flood lights of the station turned on at the time. The grease pit had six iron posts installed around it, one at each of the four corners and two additional along the side away from the filling station, on which could be strung guard chains or ropes, the posts having eyelets in them for that purpose. Such a rope or chain had been used by a former tenant, and this was available to the tenants involved in this case.

Plaintiff named as defendants the landowner, Williams, the lessee Reeves, and the sublessee Dewing. The latter, who was the actual operator of the filling station, did not answer the complaint, and plaintiff was awarded a default judgment of $4,250.37 and costs against him.

In the trial involving the other two defendants a motion for nonsuit was interposed at the close of plaintiff's

testimony, the court electing to reserve his ruling until later. At the close of all of the evidence the motion for nonsuit was denied, but the court granted defense counsel's motion for a directed verdict. Seeking a reversal of the judgment based upon this verdict, plaintiff comes here on writ of error and asks that the cause be determined on her supersedeas application, and we have elected so to dispose of it.

Plaintiff's position is that defendants Williams and Reeves also were responsible, in that the location of the grease pit within fourteen to sixteen feet of the filling station made it a hazard to customers of the station. The evidence showed that the pit, which was 23½ feet long, 2 feet wide and 4½ feet deep, was bounded on both sides by a cement surface about three feet in width. Between the station and the nearest cement strip was a gravelled surface. Against the station building was some shrubbery. Plaintiff testified that when her feet were on the cement surface at the side of the pit she thought she was on a sidewalk.

Hereinafter it will be understood that any reference to defendants will exclude Dewing, and include only Williams and Reeves.

Defendants' position is that the property was turned over to the operator, Dewing, in a structurally safe condition: (1) that the station was adequately equipped with lighting facilities including: two tall poles, properly wired and having sockets and reflectors for floodlights, one of which was just southwest of the grease pit; sockets for lights on the two gas pumps located on the island, and also on the two gas pumps in front of the canopy; three sockets on the southwest, three on the northeast and four on the southeast side of the canopy, with one large light in the center of the canopy; that the floodlights on the filling station across the street, which were lighted at the time, were adequate to light defendants' corner, even if the lights on the latter were turned off. (2) That the location of the grease pit in respect

to the station was of standard distance, and the same as other grease pit-filling station arrangements in Greeley. (3) That chains and ropes for use in connection with the posts surrounding the grease pit were turned over to the operator Dewing when he took possession. That the injury resulted either from plaintiff's own negligence in not looking where she was going, or, if she actually could not see, then it was the fault of the operator in (a), failing to have the station lights turned on, and (b), not having the pit roped off. That defendants were responsible for none of these conditions.

Plaintiff relies on *Colorado Mortgage & Investment Co. v. Giacomini*, 55 Colo. 540, 136 Pac. 1039, where we held the lessor, as well as the lessee, of a hotel property liable in damages to the injured guest where structural defects in the elevator—the wiring had been removed so that it could not be lighted, and it also had a tendency to "creep"—existed at the time of the beginning of the tenancy, the lessor knowing the public use to which the property was being devoted, i.e., that of a hotel. We pointed out that the accident would not have occurred had it not been for the concurrence of the negligence of the lessee's employee in the operation of the elevator, and the negligence of the lessor in knowingly leasing it in a defective condition.

Twenty years later, we applied the doctrine of the Giacomini case in *Gilligan v. Beakesley*, 93 Colo. 370, 26 P. (2d) 808, affirming a judgment of the trial court holding the landlord of a building used for doctors' offices, as well as residences, liable, where a patient of a doctor tenant opened a door in one of his rooms and fell twelve feet to a cement surface below, there being no landing or platform upon which the patient could step in emerging from the door. Here again there was a continuing structural defect existing from the time the tenancy began.

Defendants' counsel argue that these very authorities support the action of the trial court in the instant case

because, at the time of the leasing and subletting, the property was in perfect condition, structurally. The landlord had furnished every facility for its safe operation. In this connection, evidence was given showing that the relative location of the filling station and the grease pit was similar to arrangements of eighteen or twenty other filling station properties in or near the city of Greeley, including two on corners opposite to the one here in question. All of the fixtures necessary to provide for a safe operation of the grease pit were furnished. It therefore is argued that any negligence in this case was solely that of the tenant operator, who may have failed (1), to have the property adequately lighted at the time, and (2), to have the guard chains strung, or take other protective measures; and, as against the operator, plaintiff already has obtained judgment.

In reply, plaintiff's counsel argues that the fact that eighteen other filling stations in Greeley have similar arrangements and dimensions in respect to the grease pits located thereon, does not justify a bad arrangement or practice, citing *Lavelle v. Grace,* 348 Pa. 175, 34 A. (2d) 498, 150 A.L.R. 366; *Peters v. Schillig-Scott Lumber Co.,* 107 Colo. 310, 111 P. (2d) 898; *Tite v. Omaha Coliseum Corp.* (Neb.), 12 N.W. (2d) 90, 149 A.L.R. 1164. But in all of those cases it was the operator-owner of the property who was held liable, or, as in the case of *Thurman v. Ice Palace,* 36 Cal. App. (2d) 364, 97 P. (2d) 999, cited in plaintiff's brief, it was held to be a question of fact for the jury whether the operator was liable. In *Lavelle v. Grace, supra,* a jet of steam, blown across the highway for considerable periods of time, obscured the view and thus caused an accident. It was there held that usage cannot sanction a practice which produces a dangerous condition.

It is apparent that the present case differs from the Giacomini case and *Gilligan v. Blakesley, supra,* and the authorities cited therein, in that the structure of which complaint was made was purposely installed. Unlike the

pit or excavation in *Copley v. Balle,* 9 Kan. App. 465, 60 Pac. 656 (cited and from which we quoted in the Giacomini case), described as a dangerous excavation left by the owner at the time of making the lease, and which does not appear to have served any useful purpose, the grease pit in the instant case had a definite functional value, being used in the servicing of cars and trucks. When not in use, danger of persons falling into it can be avoided by several obvious methods, the possible use of two of which had been provided by the landlord, i.e., facilities for adequate lighting, and iron guard posts between which protecting chains or ropes could be strung.

Plaintiff's counsel refers to the fact that the need of a pit could be obviated by the use of an hydraulic hoist, even though the latter might be more expensive. Defendants, however, introduced evidence showing that an hydraulic hoist is not feasible in the servicing of heavy trucks, which was a part of the filling station business. With this record we cannot say that the grease pit is a structural defect for which the landlord should be held responsible. We are of the opinion that an injury resulting from its careless use, just as one that might occur from the negligent use of an hydraulic hoist, is chargeable against the operator-tenant and not against the landlord. This holding appears to be in harmony with the pronouncement in *Mellen v. Morrill,* 126 Mass. 545, *Wheeler v. Pullman Palace Car Co.,* 131 Ill. App. 262, and other cases discussed in the annotations in 123 A.L.R. 870, concerning a landlord's liability to business patrons of his tenant.

Judgment affirmed.