222 P.2d 986

RENDALL et ux. v. PIONEER
HOTEL, Inc.

No. 5151.

Supreme Court of Arizona.

Oct. 17, 1950.

Cusick & Watkins, of Tucson for appellants.

Darnell, Robertson & Holesapple, of Tucson, for appellees.

PHELPS, Justice.

Linton L. Rendall and Alberta Louise Rendall, husband and wife, appellants, brought this action in the superior court of Pima County against the Pioneer Hotel, Inc. and the Tucson Junior Chamber of Commerce, a corporation (hereinafter called the hotel, and the J. C.'s respectively) to recover damages for injuries alleged to have been sustained by Mrs. Rendall as the result of a fall suffered while dancing upon the ballroom floor located in the Pioneer Hotel on the evening of February 20, 1947.

Appellants alleged in their complaint that on the above date they had purchased tickets from the J. C.'s to their annual rodeo dance at the ballroom located in the hotel and were in attendance as invitees at such dance when Mrs. Rendall was injured; that the direct and proximate cause of her fall and her consequent injury was: that the defendant hotel or the defendant J. C.'s or both of them negligently permitted persons to pass freely from the adjacent bars into the ballroom carrying drinks and to dance therein with drinks in their hands and to spill liquids and to drop and break glass containers on the dance floor; that they or one or the other of them negligently failed to regulate or prevent this conduct or to adequately inspect the dance floor or to maintain it in a safe condition and that while Mrs. Rendall was dancing on such ballroom floor as an invited guest she stepped on a spot where liquid had been spilled and glass broken causing her to lose her balance and fall backward resulting in the injury complained of.

On the evening in question the J. C.'s were conducting their annual rodeo dance at the hotel under an arrangement with the hotel whereby the ballroom was donated to the J. C.'s without any charge whatever (as had been the custom in former years).

Mr. A. L. Roberts who acted for the hotel in making the arrangements with the J. C.'s for use of the ballroom that evening testified that the J. C.'s were to assume complete charge thereof and full responsibility therefor. They asked that all tables be removed from the ballroom and that only the chairs be left and placed around the walls. Accordingly there were three rows of chairs placed around the walls. The J. C.'s hired their own police. The hotel retained no jurisdiction over the ballroom at all. The evidence also shows that the J. C.'s hired the orchestra for the evening. It further discloses that the J. C.'s sold tickets to approximately 2000 guests of whom 1400 to 1600 were in attendance at the dance that night. The J. C.'s retained the entire proceeds of the sale. The ballroom proved to be inadequate to accommodate the crowd and dancing was carried on in a street adja-

cent to the hotel. The ballroom is located on the second floor of the hotel. Adjacent thereto the hotel operated two bars, one known as the Bamboo Room and the other as the Service Bar, entrances to which were made through separate doors leading from the ballroom. These bars were in the exclusive control of the hotel and all employees therein were employees of the hotel. There was also an entrance to the Bamboo Room from the hallway leading down to the ballroom. Admission to the ballroom was gained by guests surrendering their tickets to representatives of the J. C.'s located at a table which the hotel had permitted to be placed at the entrance of the hallway leading to the ballroom over which the hotel retained control and incidentally which passed by the Bamboo Room. The table was placed at the entrance to the hallway for the convenience of the J. C.'s with the understanding that guests of the hotel were to be given access to the Bamboo Room without the necessity of presenting tickets to the ball. Guests of the ball were stamped on their wrists with some kind of a colored substance for identification purposes. Guests of the hotel allowed to enter the Bamboo Room were not entitled to pass on into the ballroom.

In addition to the policemen employed by the J. C.'s to maintain proper decorum among the guests there were 12 members of the J. C. organization known as vigilantes who were assisting in the general supervision of the dance.

Before trial appellants entered into a covenant with the J. C.'s not to sue and the cause proceeded to trial against the appellee hotel.

Upon motion of defendant at the close of plaintiffs' case the court instructed a verdict in favor of the hotel and against appellants upon the ground that at the time plaintiff sustained her injuries the dance hall upon which she fell was under the exclusive control of the J. C.'s, the hotel having previously thereto released all control thereof to that organization.

From the order and judgment entered therein appellants prosecute this appeal and assign as error:

1. The trial court erred in directing a verdict and entering judgment in favor of the defendant for the reason that there was sufficient evidence in the record from which a jury could reasonably have found a duty of the defendant to the plaintiff Alberta Louise Rendall, a violation of that duty (negligence) and an injury as a consequence thereof.

2. The trial court erred in directing a verdict and entering judgment as aforesaid for the reason that there was sufficient evidence in the record upon which a jury could reasonably have found that the defendant failed in its duty to exercise reasonable supervision of the methods or manner in which its concessionaire (Tuc-

son Junior Chamber of Commerce) conducted the dance, the violation of which duty (negligence) was the proximate cause of the injury to Alberta Louise Rendall, the plaintiff.

3. The trial court erred in directing a verdict and entering judgment in favor of the defendant for the reason that the evidence was sufficient from which a jury could reasonably find that the plaintiffs were the invitees of not only the Tucson Junior Chamber of Commerce (tenant) but the invitees of the defendant itself (landlord).

We will consider all of these assignments together. In doing so, logically our first consideration must be to determine the relationship of the parties arising out of the letting of the ballroom to the J. C.'s by the hotel. Appellants contend that, by virtue of the arrangement made, the J. C.'s became either an independent contractor or a concessionaire.

▮ To constitute the J. C.'s an independent contractor we must be able to say that in conducting its annual rodeo dance in the hotel ballroom it was then and there engaged in the performance of some service for the hotel. From no stretch of the imagination can such fact be gleaned from the evidence. Therefore the J. C.'s were not acting as an independent contractor. A concessionaire is necessarily one who is the beneficiary of a concession, that is, a grantee or holder of a concession. A concession is defined by Webster's latest unabridged dictionary as "a grant or lease of a portion of premises for some specific use or of a right to enter upon premises for some specific purpose as a concession at a fair for a lunch counter."

In Volume 8, Words & Phrases, Perm. Ed., page 355 it is said: " * * * the English word 'concession', derived from the Latin word (concessio) in its ordinary use, is word (concessio) in its ordinary use, is exactly or nearly the equivalent of the word 'grant,' * * *" and that "The word 'concessi' in a lease implies a covenant for quiet enjoyment * * *", citing Gallup v. Albany Ry., 7 Lans., N.Y., 471, 479, and Lanigan v. Kille, 97 Pa. 120, 125, 39 Am.Rep. 797.

▮ For all practical purposes if a concession gives a concessionaire the exclusive right to the use of real property his rights are identical with that of a lessee and the relation of landlord and tenant is created. If the right is not exclusive the occupant is a mere licensee. The relationship of persons under such circumstances is primarily a question of fact to be determined from the intent of the parties, ascertained from a consideration of the agreement between the parties. Lamken v. Miller, 181 Wash. 544, 44 P.2d 190, 192.

▮ If exclusive possession or control of the premises or a portion thereof is

granted even though the use is restricted by reservations the instrument or agreement will be considered to be a lease and not a license. Barnett v. Lincoln, 162 Wash. 613, 299 P. 392, and cited cases.

■ In accordance with the rules laid down in these cases, and they are supported by many authorities, we hold that under the undisputed evidence in this case the transaction between the hotel and the J. C.'s created the relation of landlord and tenant; that on February 20, 1947 the hotel surrendered to the J. C.'s the exclusive control over the ballroom located on its second floor, and that the J. C.'s assumed full charge and full responsibility therefor.

Our next consideration then is what were the duties of the hotel to the invitees of the J. C.'s? Section 355 of the Restatement of the Law of Torts, page 966 of Volume 2 states as follows: "Except as stated in sections 357 and 362, a lessor of land is not subject to liability for bodily harm caused to his lessee or others upon the land with the consent of the lessee or sub-lessee by any dangerous condition which comes into existence after the lessee has taken possession." The exception in section 357 thereof is if:

"(1) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and

"(2) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented."
the lessor is subject to liability. The exception under section 362 thereof is that if "A lessor of land who, by purporting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sub-lessee."

■ There is no claim in this case that there were any defects, structural or otherwise, in the ballroom floor at the time possession thereof was turned over to the J. C.'s. The specific charge is that Mrs. Rendall fell and was injured as the result of stepping upon broken glass dropped on the dance floor by guests of the J. C.'s attending the ball. We will therefore refrain from a discussion of the duties of a landlord to invitees of a tenant under any other circumstances than that presented by the facts in this case, except to observe that the measure of duty of a landlord under any circumstances is to exercise only ordinary care to keep his premises in a safe condition for those to whom he owes a duty.

■ At common law, subject to certain exceptions not here material, the occupier or tenant and not the landlord was liable to a third person on the premises for in-

jury caused by the condition or use of the demised premises. Harte v. Jones, 287 Pa. 37, 134 A. 467, 47 A.L.R. 843.

■ In 32 Am.Jur., Landlord and Tenant, page 529, section 665 it is said: "* * * It is the well-settled general rule that the duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant himself. For this purpose they stand in his shoes. This rule applies to the tenant's wife or child. Where the tenant has no redress against the landlord, those on the premises in the tenant's right are likewise barred. Visitors, customers, servants, employees, and licensees in general of the tenant are on the premises as guests etc., of the tenant, and not of the landlord. Whatever rights such invitation or license from the lessee may confer, as against such lessee, as against the lessor it can give no greater rights than the lessee himself has. * * (Citing many cases.)" See also Runyon v. City of Los Angeles, 40 Cal.App. 383, 180 P. 837; Volz v. Williams, 112 Colo. 592, 152 P.2d 996; Shotwell v. Bloom, 60 Cal.App.2d 303, 140 P.2d 728; 52 C.J.S., Landlord and Tenant, § 418, note 8, page 59. There are some cases to the contrary but we believe the better reasoning sustains the above proposition. A tenant is not the servant of the landlord so that a tort committed by the tenant either by an act of commission or ommission could be imputed to the landlord, therefore the tenant under such circumstances would alone be responsible for such tort.

■ In the instant case the broken glass in question was dropped on the dance floor while the ballroom was under the exclusive control and supervision of the J. C.'s. If the presence of the glass on the dance floor constitutes negligence it must be charged to the J. C.'s if to anyone and to the J. C.'s alone. Certainly the J. C.'s had no cause of action against the hotel for something they themselves did or permitted to be done as lessee of the ballroom, therefore appellants who stand in their shoes have no rights as against the hotel. The evidence does not show how long the glass had been upon the floor at the point where Mrs. Rendall fell. The only testimony relating to that was that two witnesses saw the glass there after the accident. There were two other witnesses who testified to seeing glass on the floor during the course of the evening, one far back in the northwest corner of the ballroom early in the evening and another believes he saw some glass between the Bamboo Room and the ballroom at one time. Therefore even if under any theory the guests of the J. C.'s who attended the dance that night could be said to be invitees of the hotel, liability as against the hotel could be established only by showing that the hotel knew of the existence of broken glass on the floor or by the exercise of ordinary care should have known of its existence there.

The cases cited by appellants in support of their claim as against the hotel had to do with amusement places and either concerned defects existing at the time the possession was given to the lessee or licensee or dangerous condition permitted to exist on portions of the premises over which the lessor was required to retain supervision for the protection of others using the park at his invitation to enjoy other attractions.

The trial court correctly instructed a verdict for the hotel at the close of plaintiffs' case.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.