601 P.2d 294

**Helen F. HICKS, Plaintiff/Appellant,**

v.

**SUPERSTITION MOUNTAIN POST NO. 9399, VETERANS OF FOREIGN WARS OF the UNITED STATES, an Arizona Corporation, Defendant/Appellee.**

No. 2 CA–CIV 3085.

Court of Appeals of Arizona, Division 2.

March 29, 1979.

Rehearing Denied May 9, 1979.

Review Granted June 5, 1979.

Gibson & Valentic by Franklin K. Gibson, Mesa, for plaintiff/appellant.

Udall, Shumway, Blackhurst, Allen, Bentley & Lyons, P. C. by John H. Lyons, Mesa, for defendant/appellee.

OPINION

HOWARD, Judge.

This appeal arises out of a suit for personal injuries sustained by Mrs. Hicks when she fell on the V.F.W. premises. The case was tried to a jury which returned a defense verdict. The sole complaint on appeal is with respect to the jury instructions. Appellant presents the following issue:

"Did the trial court err in instructing the jury that a possessor of property is not required to give invitees notice of an obvious danger on the premises—without qualifying that statement stating that there may be liability in such cases if the possessor should anticipate harm to such invitees?"

Mrs. Hicks was an active member of appellee's women's auxiliary and usually assisted in the kitchen whenever cooking was to be done. At the time of the accident she was helping with the preparation of a barbecued pig, which was to be served at a fund-raising luau sponsored by the auxiliary. Part of the preparation procedure consisted of wrapping wet burlap bags around the pig. This required soaking the bags in the sink and then carrying them to a nearby table to wrap around the pig. As the bags were carried to the table, water dripped on the floor and some was tracked around the table by people walking around. Some burlap bags were on the floor to absorb some of the water. Nothing else, however, was done to mop up the water spilled on the floor.

This wrapping process had been going on about ten to twenty minutes before Mrs. Hicks fell. According to her, her feet came out from under her as she started to turn around to get something off the drainboard. She knew that the kitchen floor was slippery when wet but had never slipped in the kitchen before. About a year before, however, she observed two other women who were preparing a turkey dinner with her in the kitchen slip when there was water on the floor. It was usual for water to spill on the floor near the sink when dishes were being washed but the women always tried to keep it wiped up.

At the time of the accident, four people were working in the kitchen—two men Mrs. Hicks and Mrs. Harrison, the auxiliary president. During the burlap-wrapping process, the two men and Mrs. Harrison warned people who came into the kitchen to be on the alert because there was water on the floor. Mrs. Hicks came into the kitchen at least three times and was told to be careful because there was water on the floor. Mrs. Hicks admitted that she knew water was the floor but did not realize that it had extended to the area where she was standing just prior to her fall. She did not hear any warnings because "I was doing several different things at one time in between the clubroom and into the kitchen."

Mr. Roy, post commander from June 1974 to June 1977, testified that the kitchen was used to prepare coffee and sandwiches for the regular bingo events and also for occasional dinners. He usually attended post functions and occasionally went into the kitchen when there were preparations or activity there. He observed anywhere from one to five people working in the kitchen and, according to him, other post officers also went into the kitchen at times. The auxiliary had to obtain permission from the post to use the facilities. Mr. Roy usually attended auxiliary functions and "probably" passed through the kitchen when the auxiliary was using the facilities. The same floor tile had been in the kitchen all the time he was a member and during his tenure as post commander. He admitted that the floor might be slippery if wet but never paid much attention to whether or not it was wet. "If you are washing dishes, you are going to have a little bit of water on the floor," he stated. He had never considered the fact that someone might fall.

Mrs. Harrison testified that it was well-known that the kitchen floor was slippery when wet. Mrs. Hicks, having worked in the kitchen many times, was aware of this.

Appellee contends that the trial court should have directed a verdict in its favor at the close of appellant's case as it could not be liable for injuries caused by the negligence of the auxiliary while it had exclusive control of the V.F.W. facility. It cites *Rendall v. Pioneer Hotel*, 71 Ariz. 10, 222 P.2d 986 (1950) to support its position. We do not agree with appellee.

*Rendall* involved a situation where exclusive control of the hotel ballroom was given to the Tucson Jaycees for their annual rodeo dance and the injury-causing condition, a glass broken on the dance floor by a guest, came into existence *after* the Jaycees took possession. It is true that the water was spilled in the V.F.W. kitchen while the auxiliary was in control. However, appellant's theory of negligence was not that appellee was liable for the water on the floor. Her theory was that appellee, as owner of the premises, knew or should have known that the floor tile became slippery when wet and should have provided some safeguards to correct the problem.

Appellant contends that the trial court erred in giving the underlined portion of the following instruction requested by appellee:

"You are instructed that the owner of a premise is not required to give an invitee notice or warning of an obvious danger existing on the premises. *If you find that the condition on the premises was either obvious or reasonably apparent to an ordinarily prudent person in Plaintiff's position, then you should find for the Defendant.*"

We agree with appellant that, since there is no dispute that the danger was obvious, the effect of this instruction was to direct a verdict for appellee.

In *George v. Fox West Coast Theatres*, 21 Ariz.App. 332, 519 P.2d 185 (1974), this court recognized that the "open and obvious" rule is not rigidly adhered to and that unless the condition is so open and obvious as to render it not unreasonably dangerous as a matter of law, the issue of the possessor's liability is for the trier of fact. See also *Murphy v. El Dorado Bowl, Inc.*, 2 Ariz.App. 341, 409 P.2d 57 (1965) and *Yuma Furniture Co. v. Rehwinkel*, 8 Ariz.App. 576, 448 P.2d 420 (1968).

Restatement (Second) of Torts, Sec. 343 (1965) provides:

"Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Comment *a* states that this section should be read together with Sec. 343 A, which deals with the effect of the fact that the condition is known to the invitee, or is obvious to him. Sec. 343 A(1) provides:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Comment *f* points out that there are situations in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. Under these circumstances, the possessor may have a duty to warn the invitee or to take other reasonable steps to protect him against the known or obvious condition if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

The modern trend of decisions shows a departure from the traditional rule that absolves, ipso facto, the landowner from liability where the danger is open and obvious. See Annot. 35 A.L.R.3d 230 Sec. 4(c) (1971). In *Pribble v. Safeway Stores, Inc.*, 249 Or. 184, 437 P.2d 745 (1968), the Oregon Supreme Court held that even a customer's knowledge that the asphalt tile floor was wet and slippery, and therefore dangerous, would not cause the store owner to be free

of negligence. The court noted that surfaces that become slick when wet can be made safe by the application of various kinds of abrasives or by the use of mats or rugs to absorb the water, thus avoiding the consequences of a wet surface.

We hold that the court's instruction to find for appellee if the jury found that the condition was obvious or reasonably apparent to Mrs. Hicks was erroneous. It completely withdrew from the jury's consideration the question of whether appellee should have anticipated that the wet floor would cause physical harm to someone like appellant notwithstanding her knowledge of the danger. The jury might find that if appellee should have anticipated the harm, a warning would not have been sufficient and appellee should have taken other steps to protect appellant from the dangerous condition of the floor when it became wet. The fact that the danger was known or obvious to Mrs. Hicks was important in determining whether she was contributorily negligent or assumed the risk. It was not conclusive as to appellee's duty and was merely a factor to be considered in determining whether the condition was unreasonably dangerous.

Appellee maintains that the following instruction, given at its request, conveyed to the jury the appropriate legal principle to be applied:

"You are instructed that there are three elements necessary to establish liability of an owner or possessor of land to a business invitee. Plaintiff must prove: (a) that the possessor knew, or by the exercise of reasonable care could have discovered, the condition which, if known to him, should have caused him to realize that it involved an unreasonable risk of harm to plaintiff; (b) that defendant had no reason to believe that plaintiff would discover the condition or realize the risk involved; and (c) that defendant invited or permitted plaintiff to enter or remain upon the land without exercising reasonable care, (1) to make the condition reasonably safe, or (2) to give warning adequate to enable plaintiff to avoid the harm."

This instruction is an attempted paraphrase of Sec. 343, supra. It does not, however, cure the vice created by the other instruction, which precluded the trier of fact from considering whether appellee should have realized that the wet floor involved an unreasonable risk of harm and should have anticipated the harm despite the obviousness of the danger.

Reversed and remanded for a new trial.

RICHMOND, C. J. and HATHAWAY, J., concurring.