NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEVEN LANE, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

GAVILAN PEAK ESTATES, LLC, *Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 17-0604
FILED 1-15-2019

Appeal from the Superior Court in Maricopa County
No. CV2014-013584
The Honorable Daniel J. Kiley, Judge

**REVERSED AND REMANDED**

COUNSEL

Robbins & Curtin P.L.L.C., Phoenix
By Joel B. Robbins
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney (argued)
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Jones, Skelton & Hochuli P.L.C., Phoenix
By John M. DiCaro, Justin M. Ackerman (argued)
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1 Steven Lane appeals from the superior court's grant of summary judgment in favor of Gavilan Peak Estates, LLC ("Gavilan Peak"). For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In 1984, Charles Byers purchased four parcels of property totaling approximately 120 acres in New River, which he referred to as "Starflash Ranch." In 1987, Byers transferred the four parcels comprising the property to American Security Investments Trust, an irrevocable trust created by Byers. Byers manufactured and stored large quantities of a variety of explosive devices and chemicals on the property, and he conducted training classes using munitions and explosives.

¶3 In September 1997, federal agents searched the property and found a large quantity of explosives and dangerous reactive chemicals, and the U.S. Environmental Protection Agency designated the property "for time-critical removal action under the Comprehensive Environmental Response, Compensation, and Liability Act." Federal officials denotated on-site or removed for disposal approximately four tons of nonexplosive chemicals and 1000 pounds of explosives. A large quantity of chemicals and explosives remained on the property, however, and the federal government determined the only safe option was to burn them on site.

¶4 New River residents and the Governor of Arizona expressed concern about the danger of the federal government's plan. So, in March 1999, the federal government terminated its involvement with the property and allowed the State to take control of the cleanup. The governor declared a state of emergency at the property, stating "a release or a threat of a release of hazardous materials and an imminent and substantial endangerment to the public health or welfare or the environment exist on the Property." The governor directed state agencies to "take whatever action is necessary on

the Property or any other place to eliminate, monitor, abate, mitigate, remediate, or otherwise remove the hazardous condition thereon . . . ."

¶5          The governor commissioned a task force to perform remedial activities, and the State removed over 8000 pounds of explosive materials and hazardous chemicals from the property. In May 1999, the governor issued a press release saying, "I want to tell the residents of New River the danger is over . . . the hazardous materials are gone and the residents are safe."

¶6          In July 1999, Byers' brother Robert Byers, as trustee of American Security Investments, accepted possession and control of the property from the State. In the Acceptance of Possession, the State explained it was returning the property in "a better condition than it was when the State took possession." However, the State also declared it:

> [M]akes no warranty or representation to [Robert] Byers that all explosives, hazardous materials, or hazardous conditions have been removed from the Property or that the Property is fit for any particular purpose. Explosive materials, hazardous materials, and other hazardous conditions may be present on the Property despite the diligent efforts of the State to locate and safely dispose of such explosive materials, hazardous materials, and hazardous conditions.

¶7          Six years later, Gavilan Peak purchased the property from American Security Investments and Wendy Berns-Byers, Charles Byers' wife. At various times, tenants lived in a home on the property, and, beginning in 2010, Gavilan Peak leased the property to Troy and Elvan Hager. In September 2013, Chelsie Garner and Jordan Perrin, after talking to the Hagers, moved onto the property. The Hagers' lease agreement with Gavilan Peak prohibited subleases, and there was not a written sublease between the Hagers and Garner and Perrin.

¶8          Garner and Perrin paid the Hagers rent in September and October 2013, but the Hagers did not pay Gavilan Peak rent for either of those months. Troy Hager told Gavilan Peak's manager, Allan Johnson, that Garner and Perrin may be interested in leasing the property. In response, Johnson sent Garner a sample lease agreement. Gavilan Peak learned Garner and Perrin were living on the property without its permission sometime around early November 2013. Johnson told Garner she and Perrin did not have a right to be on the property and through text messages

told Garner and Perrin to move out or pay the back-rent owed by November 4.

¶9	Garner asked a friend, Mike Miller, to help them move off the property. Miller asked his friend, Steven Lane, to also help with the move, and together they went to the property. Garner agreed to allow Lane to pick up scrap metal while he was on the property, which Lane intended to sell. On November 4, 2013, after helping Garner and Perrin move out of the home on the property, Lane loaded a refrigerator and scrap metal onto and into his vehicle. Intending to continue looking for scrap items, Lane walked around the property. At some point, Lane dragged his left foot on the ground, triggering an explosion. The explosion severely injured Lane.

¶10	In August 2015, Lane filed a second amended complaint against: the State of Arizona; Maricopa County Sheriff Joseph Arpaio; Charles Byers and Wendy Berns-Byers; John Flynn as trustee on behalf of American Security Investments Trust; and Gavilan Peak. Lane's claims against the sheriff were dismissed, and Lane settled his claims against all other parties except Gavilan Peak. Regarding Gavilan Peak, Lane pled one count each of premises liability, false light invasion of privacy, and fraudulent transfers.

¶11	Gavilan Peak moved for summary judgment on all of Lane's claims. Concerning Lane's premises liability claim, Gavilan Peak argued it was entitled to summary judgment because: (1) Lane was a trespasser at the time he was injured; (2) Gavilan Peak did not willfully, intentionally, or wantonly injure Lane; and (3) based on the Restatement (Second) of Torts ("Restatement") § 358 (1965), Gavilan Peak is not liable for Lane's injuries because Gavilan Peak did not know or have reason to know about the dangerous condition on the property and Garner and Perrin knew of the dangerous condition on the property or had a reasonable opportunity to discover it.

¶12	Lane responded to Gavilan Peak's summary judgment motion, arguing: (1) he was not a trespasser at the time he was injured, but rather an invitee or a licensee; and (2) genuine issues of fact exist regarding whether Gavilan Peak breached the duty of care it owed Lane and whether Wendy Berns-Byers' knowledge about the property should be imputed to Gavilan Peak. After oral argument, the superior court entered summary judgment in favor of Gavilan Peak on Lane's premises liability and fraudulent transfers claims. The superior court denied Gavilan Peak's summary judgment motion on Lane's false light invasion of privacy claim, but the parties later stipulated to its dismissal.

4

¶13 Pursuant to Arizona Rule of Civil Procedure 59(a)(1)(H), Lane moved for a new trial, to which Gavilan Peak objected. The superior court denied Lane's motion. Lane timely appealed, and Gavilan Peak cross-appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶14 Lane argues the superior court erred by granting summary judgment because: (1) Gavilan Peak is liable under Restatement § 358; (2) Lane was an invitee when he was injured and Gavilan Peak breached the duty of care it owed to Lane as an invitee; (3) Gavilan Peak is also liable under the Restatement (Second) of Property: Landlord and Tenant § 17.1 (1977); and (4) absolving Gavilan Peak of liability under either restatement section would violate Arizona's version of the Uniform Contribution Among Tortfeasors Act. Gavilan Peak counters by arguing the superior court correctly granted summary judgment in its favor under Restatement § 358, but alternatively argues on cross-appeal that it is not liable to Lane because: (1) Lane was a trespasser when he was injured, and even assuming Lane was an invitee it did not breach any duty it may have owed to Lane; (2) Lane was a guest of a sublessee; and (3) Lane was attempting to steal ferrous or non-ferrous metals when he was injured.

¶15 Summary judgment is proper if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). On review from the grant of summary judgment, we view all facts and reasonable inferences in the light most favorable to Lane and review the superior court's decision *de novo*. *See Normandin v. Encanto Adventures LLC*, 245 Ariz. 67, 71, ¶ 7 (App. 2018), *review granted* (Jan. 8, 2019). To establish a claim for negligence, Lane must prove: (1) a duty requiring Gavilan Peak to conform to a certain standard of care; (2) a breach by Gavilan Peak of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *See Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564–65, ¶ 7 (2018).

**A. Genuine Disputes of Material Fact Exist Whether Gavilan Peak or Garner and Perrin Knew of or Had Reason to Know a Dangerous Condition or Risk Existed on the Property.**

¶16 As an initial matter, Gavilan Peak contends Lane waived his arguments regarding Gavilan Peak's liability under Restatement § 358. Although Lane did not directly respond to Gavilan Peak's Restatement arguments made in its motion for summary judgment, the parties argued

its applicability at oral argument, and the superior court considered the issue when ruling on Gavilan Peak's summary judgment motion. Thus, we find the issue has not been waived. *See Normandin*, 245 Ariz. at 72, ¶ 12 (argument was not waived where it presented a question of law and the superior court considered it); *Evenstad v. State*, 178 Ariz. 578, 582 (App. 1993) ("If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue.").

**¶17** Regarding the merits of the claim, our supreme court has explained the general rule that a landlord is "under a duty of ordinary care to inspect the premises when he has reason to suspect defects existing at the time of the taking of the tenancy and to either repair them or warn the tenant of their existence." *Cummings v. Prater*, 95 Ariz. 20, 26 (1963). *But cf.* Restatement § 356 ("Except as stated in §§ 357–362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession."); *see also id.*, cmt. a ("When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession, both to those who enter the land and to those outside of it. Therefore, as in the case of the vendor under § 352, it is the general rule that the lessor is not liable to the lessee, or to others on the land, for injuries occurring after the lessee has taken possession, even though such injuries result from a dangerous condition existing at the time of the transfer.").

**¶18** Under different circumstances, however, a lessor may remain liable based on dangerous conditions on the land. Restatement § 358 provides:

> (1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
>
> (a) the lessee does not know or have reason to know of the condition or the risk involved, and

6

> (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

This court has adopted Restatement § 358. *Piccola ex rel. Piccola v. Woodall*, 186 Ariz. 307, 312 (App. 1996).

**¶19** Under § 358, Gavilan Peak is liable for Lane's injuries if Gavilan Peak knew or had reason to know of the dangerous condition or risk that caused Lane's injuries and if Garner and Perrin did not know or have reason to know about the condition or risk. Relying primarily on deposition testimony from Johnson, Garner, and Charles Byers, Lane argues Gavilan Peak "knew *and* had reason to know the land harbored potentially dangerous explosive devices, materials, or booby traps" and that Garner and Perrin did not know or have reason to know of the condition. Lane also argues there are several "disputed questions of fact concerning the nature and scope of the knowledge and 'reason to know' of all relevant actors." We agree genuine disputes of material fact exist about whether Gavilan Peak knew or had reason to know a dangerous condition or risk existed on the property and about whether Garner and Perrin knew or had reason to know of the condition or risk and realized or should have realized that risk. *See* Restatement § 358. Therefore, the superior court erred by granting summary judgment. *See* Ariz. R. Civ. P. 56(a).

**¶20** "Whether a person has 'reason to know' something is a fact question." *Verduzco v. Am. Valet*, 240 Ariz. 221, 225, ¶ 12 (App. 2016). Reason to know exists if a reasonable person would "either infer the existence of the fact in question or would regard its existence as so highly probable that his [or her] conduct would be predicated upon the assumption that the fact did exist." *Id.* (alteration in original) (quoting *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 73, ¶ 20, n.1 (App. 2011)); *see also* Restatement § 12(1).

**¶21** It is undisputed that before Gavilan Peak purchased the property it knew Charles Byers ran an explosives manufacturing business there. Johnson testified he and Charles Byers talked about the property's history, and Charles Byers showed Johnson where on the property he made and stored explosives. Gavilan Peak also knew at some point the federal and state governments had taken control of the property to clean it up. Johnson testified Charles Byers told him the property had been cleaned up, but Gavilan Peak did not do any further investigation or conduct further

7

inquiry into the extent or success of the cleanup efforts or whether any explosives potentially remained on the property.

¶22　　Lane argues a jury could reasonably conclude Gavilan Peak "should have done far more to investigate the premises' true condition." For example, Lane asserts Gavilan Peak never: (1) requested all documents regarding the property at the time of purchase, including the Acceptance of Possession form with the State's disclaimer; (2) researched Charles Byers' and the property's history; (3) asked the title company to research whether dangerous materials were left on the land; or (4) hired an expert to actually inspect the property.

¶23　　A landlord is not required to have actual knowledge of the dangerous condition existing on the premises. *Piccola*, 186 Ariz. at 311. "Information from which a reasonable person could infer that a dangerous condition exists is sufficient to impose liability," and a landlord's duty of care requires inspection of the property "if there is reason to suspect defects existing at the time the tenant takes possession." *Id.* at 310–11.

¶24　　Gavilan Peak argues none of the facts in this case gave it reason to know a dangerous condition continued to exist on the property such that it had a duty to further investigate. It maintains it was entitled to rely on the government cleanup efforts and Charles Byers' assertions the property had been remediated. Furthermore, Gavilan Peak argues that even if it had conducted further investigation, all it would have discovered is the governor's proclamation that the property was safe. The superior court agreed with Gavilan Peak, finding "no basis in the record for [Lane's] contention that, had Gavilan Peak conducted an investigation into the history of Starflash Ranch, Gavilan Peak would have uncovered information that would lead it (or a reasonable person) to suspect that a hazardous condition remained on the property."

¶25　　Gavilan Peak has not established, as a matter of law, that it did not have reason to know, or reason to suspect, a dangerous condition or risk may have existed on the property such that it is not liable to Lane. Admittedly, Johnson testified Charles Byers told him the property had been cleaned up. However, given Gavilan Peak's knowledge that the property had been used to store and manufacture explosives, a jury could conclude that a reasonable person would not have relied on the title company or Charles Byers' statements and would have sought more information about the cleanup, or assurance from the State that no explosives remained on the property.

¶26        Additionally, despite Johnson's testimony that if Gavilan Peak had further investigated all it would have discovered is the governor's proclamation, Johnson also testified at some point after purchasing the property, Gavilan Peak received a copy of the State's "Explosives Remediation Report." The report detailed the federal and state cleanup activities, referenced the governor's proclamation, and stated "the clean up effort afforded the opportunity to make a final and complete inspection of the property to ensure nothing hazardous had been overlooked." However, it primarily discussed the cleanup of just two locations on the property and stated the property is "still very disorderly and cluttered." The report referenced an appendix, which included a copy of the Acceptance of Possession. The Acceptance of Possession specifically warned that explosive or hazardous materials may still be on the property. It is not clear from the record whether Gavilan Peak received a copy of the appendix, and it maintains it never received a copy of the Acceptance of Possession, but at the very least, a jury could conclude a reasonable person would have asked for the appendix referenced in the report if it was not included. Accordingly, from this record, a jury could conclude a reasonable person should have known, or had to reason to suspect, that a dangerous condition or risk existed on the property. *See Piccola*, 186 Ariz. at 311.

¶27        Lane also argues Wendy Berns-Byers knew explosives and munitions were manufactured and detonated at Starflash Ranch, and that a jury could conclude she also knew about the "incomplete" cleanup efforts at the property. Because she was a member of Gavilan Peak, Lane contends her knowledge should be imputed to Gavilan Peak and gave Gavilan Peak "reason to know" of the potentially dangerous condition that should have been disclosed to anyone who entered the property. Wendy Berns-Byers lived on the property with Charles Byers when he was operating the munitions and explosives business. But it is unclear from the record how much Wendy Berns-Byers knew about the government cleanup, whether she ever saw a copy of the Acceptance of Possession, or whether she knew or had reason to know explosives may have remained on the property. Accordingly, we find a fact question also exists as to whether any knowledge Wendy Berns-Byers may have had gave Gavilan Peak reason to know a dangerous condition or risk continued to exist on the property.

¶28        We likewise find a fact question exists as to whether Garner or Perrin had reason to know of the condition *or the risk involved*. *See* Restatement § 358(1)(a). Garner testified she and Perrin found grenade pull pins, grenade fuses, used blasting caps, and spent shell casings on and around the property. She also testified Perrin, who had seen bombs explode while in the military, told Garner the items they found on the property were

ingredients to build bombs and booby traps. Based on this, the superior court found Garner and Perrin learned of the dangerous condition that ultimately caused Lane's injury and thus any duty Gavilan Peak may have owed Lane devolved onto them. *See Piccola*, 186 Ariz. at 312 (landlord not liable for tenants' guest's injuries because landlord's "duty to warn of or remedy the [dangerous] . . . condition devolved upon the tenants" once tenants knew of the dangerous condition).

¶29　　　　However, Garner also testified that finding items that could be used to make explosives did not motivate her and Perrin to move off the property; they found a canister of lead styphnate on the property and left it in their kitchen; and they and Garner's children commonly walked about the property. Accordingly, Lane argues a jury could find Garner and Perrin did not know about or have reason to know about the possible existence of a dangerous condition or appreciate its risk.

¶30　　　　We agree with Lane. Garner testified she was unaware of the history of the property, and a jury could find that her and Perrin's discoveries on the property did not necessarily give them reason to know of the risk that *undetonated explosives* continued to exist on the property. Genuine disputes of material fact exist, and a reasonable jury could find: (1) Gavilan Peak did know or have reason to know, or have reason to suspect, the dangerous condition or risk existed; or (2) Garner and Perrin did not know or have reason to know a dangerous condition existed on the property or appreciate its risk. Accordingly, we hold the superior court erred by granting Gavilan Peak's motion for summary judgment.

**B.　　Genuine Disputes of Material Fact Exist as to Whether Lane was a Trespasser or an Invitee When He Was Injured.**

¶31　　　　Gavilan Peak alternatively argues it is not liable for Lane's injuries because Lane was a trespasser when he was injured. Lane, however, argues he was an invitee. The duty a landowner owes to an entrant on land is defined by the entrant's status. *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 255, ¶ 34 (App. 2013). Landowners have an affirmative duty to use reasonable care to make the premises safe for an invitee's use, *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355 (1985), but a landowner owes no duty to trespassers other than to refrain from willfully or intentionally injuring them, *Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 145 (1970). An invitee is a person "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings" of the landowner; a trespasser is someone who enters or remains on another's

land "without a privilege to do so." *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142–43 (1982) (quoting Restatement §§ 329, 332).

¶32        Gavilan Peak argues Lane was a trespasser because Garner and Perrin did not have authority to allow Lane to collect scrap metal from the property and Lane was stealing the scrap metal when injured. Lane counters that by cleaning up the property he was performing tasks for Gavilan Peak's benefit; he had Garner's permission to collect the scrap metal; and at a minimum the nature of his presence on the premises and the lawfulness of his conduct "were contested questions of fact for the jury to resolve."

¶33        In denying Gavilan Peak's summary judgment motion on Lane's false light invasion of privacy claim,[1] the superior court found it could not conclude as a matter of law that Lane was a trespasser when he was injured. The court found several genuine issues of material fact existed, including: (1) whether Garner and Perrin were lawfully on the premises the day Lane was injured; (2) whether Garner and Perrin were entitled to give Lane permission to be on the premises; (3) whether Lane was stealing a refrigerator from the property when he was injured, "or simply gathering up old junk"; and (4) whether Lane exceeded the scope of any invitation to be on the premises. The record supports these findings and the conclusion that several fact questions remain. Therefore, Lane's status as an invitee or a trespasser presents a jury question. *See State v. Juengel*, 15 Ariz. App. 495, 499 (1971) ("Plaintiff's status as trespasser, licensee or invitee was contested and properly treated as a question of fact for the jury's determination."), *disagreed with on other grounds by New Pueblo Constructors, Inc. v. State*, 144 Ariz. 95, 109 (1985); *McMurtry*, 231 Ariz. at 256, ¶ 36 (whether hotel guest exceeded the scope of her invitation and became a trespasser presented a material question of fact). Gavilan Peak is not entitled to summary judgment on the ground that Lane was a trespasser when injured.

---

[1]        Gavilan Peak argued it was entitled to summary judgment on Lane's premises liability claim because Lane was a trespasser when he was injured and because it was not liable under Restatement § 358. The superior court only addressed Gavilan Peak's Restatement § 358 argument because it found the argument "dispositive" of Lane's premises liability claim. Gavilan Peak relied on the same facts to support its summary judgment motion on both Lane's premises liability and false light claims.

C.    **Gavilan Peak Can Be Held Liable for Lane's Injuries Despite Gavilan Peak Not Being in Possession of the Land and Garner and Perrin Not Having a Valid Sublease.**

¶34        Gavilan Peak also argues it is not liable to Lane because Lane was a guest of sublessees, Garner and Perrin, at the time he was injured. Specifically, Gavilan Peak argues Arizona law requires privity of estate and contract to "impose liability on a landlord not in possession of the land." Gavilan Peak thus maintains that because no privity runs between Gavilan Peak and Garner or Perrin, there cannot be liability between it and Lane.

¶35        Gavilan Peak primarily relies on our decision in *Mac Enterprises, Inc. v. Del E. Webb Development Co.*, 132 Ariz. 331 (App. 1982), to support its contention that privity of estate and contract are prerequisites to imposing liability on landlords not in possession of the land. *Mac Enterprises* did recognize the general proposition that when a tenant executes a sublease, a landlord-tenant relationship exists between the tenant and the sublessee, not between the sublessee and original lessor. *Id.* at 334. However, the issue in *Mac Enterprises* was whether the lessor was a party to the sublease and, because it was not, whether the statute of frauds provided the lessor a defense to the sublessee's complaint. *Id.* The case involved the lessor's liability for termination of a contract, not premises liability or personal injury. *See id.* at 335. Although the court held the sublessee was not in privity with the lessor, *id.* at 336, we do not read the case to hold that before any liability may be imposed on any lessor there *must* be privity of estate or contract. To the contrary, in Arizona there is no requirement of privity to maintain a tort action. *See, e.g.*, *Toy v. Katz*, 192 Ariz. 73, 89 (App. 1997) ("[T]here is no requirement of privity in tort actions for professional negligence."); *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 423 (App. 1991) (duty in a negligent misrepresentation claim may exist notwithstanding a lack of privity between the parties); *Wetzel v. Commercial Chair Co.*, 18 Ariz. App. 54, 56 (1972) (privity is not required in order to bring a products liability claim). Accordingly, we reject Gavilan Peak's argument that privity is a necessary prerequisite to imposing liability.

¶36        Gavilan Peak further relies on *Alcombrack v. Ciccarelli*, 238 Ariz. 538 (App. 2015), for the assertion that a landowner is not liable to a third party injured on the property when the landowner is not in possession of the property. In *Alcombrack*, landowners defaulted on a loan for a house they leased to a tenant, resulting in eventual foreclosure. *Id.* at 539, ¶¶ 1–2. The landowners did not tell their tenant about the foreclosure, and the tenant shot and injured a locksmith sent to the house to change the locks.

*Id.* at ¶¶ 2–3. The locksmith sued the landowners, alleging they breached a duty owed to him. *Id.* at ¶ 4. On appeal, this court affirmed the superior court's grant of summary judgment in favor of the landowners, explaining in part that "[u]nder a landowner-licensee/invitee relationship . . . a landowner not in possession of property owes no duty to a third party who is injured on the property." *Id.* at 540, ¶ 7.

¶37        *Alcombrack* is distinguishable from the facts of the present case. The cases cited by *Alcombrack* for the proposition that a landowner not in possession of a property does not owe a duty to a third person injured on the property also suggest that a landlord's liability is not so limited when the landowner knows or has reason to know of a dangerous condition that existed when the landowner leased the premises. For example, in *Rendall v. Pioneer Hotel*, 71 Ariz. 10, 15–16 (1950), our supreme court recognized that "[a]t common law, subject to certain exceptions not here material, the occupier or tenant and not the landlord was liable to a third person on the premises for injury caused by the condition or use of the demised premises." But the court also noted the defect that led to an injury in that case did not exist when the tenant took possession and the court expressly "refrain[ed] from a discussion of the duties of a landlord to invitees of a tenant under any other circumstances than that presented by the facts in this case." *Id.* at 15.

¶38        *Alcombrack* also relied on *Clarke v. Edging*, 20 Ariz. App. 267, 272–73 (1973), which noted that a landlord is generally not considered a possessor for purposes of premises liability. *Alcombrack*, 238 Ariz. at 540, ¶ 7. However, *Clarke* also recognized "there is no liability upon a landlord, either to the tenant *or to others entering the land*, for defective conditions existing at the time of the lease, *unless the lessor knew of such conditions and failed to inform the lessee of such*." *Clarke*, 20 Ariz. App. at 272–73 (emphasis added) (citing Restatement §§ 356, 358).

¶39        Gavilan Peak additionally notes *Alcombrack*'s citation to Restatement § 356 for the general rule that "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition . . . which existed when the lessee took possession." *See* 238 Ariz. at 540. But, as discussed above, Restatement § 358 provides an exception to this rule and our supreme court has disapproved of a bright-line rule shielding landlords from liability based on conditions existing when a lessee takes possession. *See Cummings*, 95 Ariz. at 22–27; *Piccola*, 186 Ariz. at 310. Rather, a "landlord is under a duty of ordinary care to inspect the premises when he has reason to suspect defects existing at the time of the taking of the tenancy and to either repair them or warn the

tenant of their existence." *Cummings*, 95 Ariz. at 26. Restatement § 358 extends the landlord's liability "to the lessee and others upon the land with the consent of the lessee *or his sublessee*." (Emphasis added.) Thus, we disagree with Gavilan Peak that because Gavilan Peak was not in possession of the land and because there was no privity between it and Garner or Perrin, Gavilan Peak cannot be liable, as a matter of law, to Lane. *See Piccola*, 186 Ariz. at 310 (landlord could properly have been held liable for injuries sustained by tenants' guest).

**D.      The Remaining Arguments are Waived on Appeal.**

**¶40**        Lane argues Gavilan Peak is liable under the Restatement (Second) of Property: Landlord and Tenant § 17.1. Lane raised this argument for the first time on appeal, which constitutes waiver. *See Mitchell v. Gamble*, 207 Ariz. 364, 369–70, ¶ 16 (App. 2004) (arguments raised for the first time may be deemed waived and a party generally cannot advance new theories on appeal from summary judgment to secure reversal). Moreover, Restatement § 17.1 is nearly identical to Restatement § 358, and our analysis above is applicable.

**¶41**        Lane additionally argues Restatement § 358 cannot create an absolute defense to Gavilan Peak's liability because an absolute defense would violate Arizona's version of the Uniform Contribution Among Tortfeasors Act. However, Lane raised this argument for the first time in his motion for new trial and therefore waived the argument. *See Bobrow v. Bobrow*, 241 Ariz. 592, 598, ¶ 29 (App. 2017) (party may not present new argument in motion for new trial).

**¶42**        Finally, Gavilan Peak argues Lane was injured while "attempting to commit the theft of ferrous or non-ferrous metals" in violation of A.R.S. § 13-1802(A)(7). It therefore asserts that under A.R.S. § 12-712(C), it is not liable to Lane. Gavilan Peak did not raise this argument below and has therefore waived it on appeal. *See Mitchell*, 207 Ariz. at 369–70, ¶ 16.

**COSTS ON APPEAL**

**¶43**        As the prevailing party on appeal, Lane is entitled to costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

14

**¶44** For the foregoing reasons, we reverse the superior court's grant of summary judgment and remand for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA